<div style="margin:right">101   169<br>b119  279</div>

## BEARDEN *et al.* *v.* CARTER MERCHANDISE CO. *et al.*

1. While at law one can not have a lien on his own property, yet, in order to prevent a failure of justice, a court of equity may, and will, sometimes intervene to keep a lien outstanding which otherwise might have been extinguished by a merger of the lien with the title ; but in order to invoke such powers, proceedings to have this done must be instituted in the first instance, and before the property covered by such lien, in a proceeding at law to which the holder thereof is a party, is subjected to other legal liens.

2. Where, under an agreement with a mortgagee, a third person becomes the purchaser of the mortgaged property and the mortgagor consents that the purchase-price be paid to the mortgagee as a credit upon the mortgage debt, which being done, the mortgagee assigns the mortgage to such purchaser of the mortgaged property, and after the transfer of such property the same is levied upon by executions against the mortgagor which are junior in point of date to the mortgage, and in order to arrest the progress of such executions the assignee of the mortgage files claims and gives forthcoming bonds for the production of the property levied upon, and where the property, upon the trial of claims thereto, is found subject and suit is brought upon the forthcoming bonds, upon the breach thereof, committed by the non-production at the time and place of sale of the property so adjudged subject, it is too late for the assignee of the mortgage to seek either to enjoin suits upon such bonds or to arrest the progress of executions issued upon judgments rendered upon some of such suits, upon the ground that the mortgage lien, under which his alleged title was acquired and which was adjudicated adversely to him in the claim cases, is superior to the judgments which were levied. The rights of the plaintiffs in execution, according to the terms of the bonds, do not depend upon whether the claimant has a superior outstanding equity, but whether the legal title sought to be asserted in the claim cases should prevail, and the

property having been found subject, the parties to the forthcoming bonds must either produce the property or pay the money.

Argued April 17, — Decided May 19, 1897.

Equitable petition. Before Judge Kimsey. Hall superior court. January term, 1896.

*Dean & Hobbs, G. H. Prior* and *W. L. Telford,* for plaintiffs in error.

*J. B. Estes* and *W. I. Pike,* contra.

SIMMONS, C. J.    In June, 1893, Barnes was a merchant in Gainesville, Georgia, and owned a stock of goods. He executed a mortgage on the goods to Kiser, Moore, Draper & Company for $4,145.38. In December of the same year, Barnes, with the consent of the mortgagees, sold his stock of goods to the Carter Merchandise Company for $2,048.08. It was agreed among the parties that the proceeds of this sale should be paid to the mortgagees, and that they would then transfer the mortgage to the Carter Merchandise Co., the proceeds of the sale being placed as a credit upon the mortgage. This was done. After the sale, nine justice's court fi. fas. were levied on the goods by a constable. A claim was filed by the Carter Merchandise Co., in each of these cases. A forthcoming bond was given by it in each case, conditioned upon the production of the property on the day of sale, if it should be found subject upon the trial of the claim cases. Draper signed these bonds as security for the Carter Merchandise Co. Upon the trial of the claim cases in the justice's court, the property was found subject by the justice. An appeal was taken in each case, some to the superior court and some to a jury in the justice's court. One of the cases in the superior court was tried, and the property again found subject by the jury in that court. All the other appeals were then dismissed. The constable readvertised the property for sale, and on the day thereof claimants failed to produce the property according to the terms of their bonds; whereupon the constable brought suit upon each of the bonds. These suits were brought in the justice's court, and judgment was rendered upon two of the bonds for a breach thereof, the judgment being against the principal and surety. These judgments were levied upon the

property of Draper, the surety, who filed illegalities to the executions upon several grounds unnecessary here to mention. At the trial judgments were rendered overruling the illegalities. The Carter Merchandise Company, Kiser, Moore, Draper & Co., and Draper individually, then filed their equitable petition, seeking to enjoin the execution of these judgments, and praying that the mortgage above referred to be declared a lien on the goods superior to the judgments in the justice's court which had been levied and to the judgments upon the forthcoming bonds, and also that the sale to the Carter Merchandise Company be confirmed and that the title to the goods be declared to be in that company, free from the lien of the judgments rendered in the justice's court. The constable, for himself and for the plaintiffs in fi. fa., answered the petition, setting up the priority of the justice's court liens to that of the mortgage; and filed a cross-petition, asking for a judgment on all the other forthcoming bonds which had been tried in the justice's court and upon which they had no judgments. Upon the trial of the case in the superior court, the jury, under charge of the trial judge, found for the complainants, and the court decreed in accordance with the prayer of the petition. Defendants made a motion for a new trial, upon various grounds set out in the record; the motion was overruled, and the defendants excepted.

The record discloses that Kiser, Moore, Draper & Company transferred their mortgage to the Carter Merchandise Company. This mortgage covered the same goods which the latter had purchased from Barnes. This in law merged the incumbrance in the legal title, because as a rule one can not have a lien upon his own property. If the Carter Merchandise Company had filed its equitable petition when the justice's court fi. fas. were first levied upon the goods, setting up the facts as they appear in this record, and praying the court for a decree declaring the mortgage lien superior to that of the justice's court fi. fas., the court would doubtless, upon proper proof, have granted the prayer. Section 3107 of our Civil Code declares: "As a general rule a party can not hold a lien on his own property; but the owner of property, subject to a lien

created or imposed against the property by another, may protect himself by purchasing the lien for levy on other property, or to hold it as a claim against the person liable to pay the same." In the case of *Clay* v. *Banks*, 71 *Ga*. 363, this court held: "As a general rule, a party can not hold a lien on his own property; and this is never allowed except where equity intervenes to protect the title and thereby prevent a failure of justice." In the case of Gould *v.* Day, 94 U. S. 413, it was said: "One can not have a lien upon his own property, except where equity interposes, and, to prevent a failure of justice, keeps the lien outstanding." See also Bispham's Principles of Equity, § 160. The trouble, however, in applying these principles to the present case arises from the fact that the plaintiffs resorted too late to equitable interference. Instead of seeking equitable relief when the alleged inferior liens were levied upon the property, they stood upon their legal rights. They filed claims, gave forthcoming bonds, and also filed illegalities. In the claim cases there was judgment against them, that the property levied upon was subject to the justice's court fi. fas. They appealed in each case from this judgment, and in one case the justice's judgment was affirmed in the superior court, and in the others the appeals were dismissed, leaving the judgments of the justice still standing. Suits were then brought upon the forthcoming bonds; judgments were obtained against the principal and surety on two of these bonds; these judgments were not appealed from; illegalities were filed to them and the illegalities were overruled, leaving the judgments on the forthcoming bonds valid and subsisting. After all this was done, the plaintiffs resorted to equity; and we think they were too late. They can not litigate at law, standing on their legal rights, until judgments are rendered against them and the property subjected to other legal liens, and then resort to equity to have these judgments reversed and set aside.

2. This is especially true where the judgments sought to be set aside and the suits sought to be enjoined are upon the forthcoming bonds. These judgments depend not upon whether the claimant had a superior outstanding equity, but whether the legal title sought to be asserted in the claim cases

should prevail; and the property having been found subject, the parties to the forthcoming bonds must either produce the property at the time and place of sale or pay the money. Judgments on forthcoming bonds are rendered for a breach of the bonds. The obligation of the principal and surety is to produce the property at the time of the sale. In the present case this obligation was not performed, and by its non-performance a breach of the bonds was committed. The principal and surety are, therefore, bound to pay the money. The lien of the judgments upon the forthcoming bonds is not a special one against the goods claimed, but is a general judgment lien upon all of the property of the principal and surety.

*Judgment reversed. All the Justices concurring.*