### KELLOGG *vs.* AMES and others.

On the 7th of December, 1857, P. executed a bond and mortgage to B., and on the 26th of July, 1858, P. and wife conveyed the mortgaged premises to D. subject to the mortgage, D. assuming and covenanting to pay the mortgage as a portion of the purchase money. D. afterwards, and previous to July 26, 1859, *paid the mortgage* to the mortgagee, but satisfaction was not acknowledged. On the 26th of July, 1859, the bond and mortgage were delivered by B. to D. together with an assignment executed with a blank for the name of the assignee. On the 30th of July, 1859, D. delivered the bond and mortgage and assignment to K. & P. as collateral security for his stock note for $1500 therewith delivered to K. & P., receiving from them, at the same time, his protested draft for $1500, then held by K. & P. On the 30th of August, 1859, the name of the plaintiff was inserted in the blank left in the assignment, and the same, together with the bond and mortgage, were re-delivered to the plaintiff, in trust for the firm of K. & P. of which he was a member, D. receiving therefor his stock note for $1500, and the firm canceling debts and evidences of debt they held against him for the remainder of the amount nominally or apparently due on the bond and mortgage, and on the same day the assignment was duly recorded. On the 8th of September, 1859, D. conveyed the mortgaged premises to the defendant A. in fee; the deed stating on its face a consideration of $8000. *Held,* that there was no necessity, if there was a place, for the doctrine of *merger.* That the mortgage debt having been *paid* by D., the owner of the fee, who had assumed and covenanted to pay it, such payment was a satisfaction of the mortgage debt, and *extinguished* the lien and vitality of the mortgage as fully as payment by P. the mortgagor would have done; whatever might have been the intention of D. and B. And that it was not in the power of D. and B., by any arrangement between them, to keep the mortgage alive, for the benefit of the party making the payment. LEONARD, J. dissented.

APPEAL by the defendant Ames from a judgment entered at a special term, after a trial at the circuit before a justice of this court without a jury. The action was brought for the foreclosure of a mortgage executed by the defendant George Philbrook to H. H. and T. H. Butterworth, on the 7th of December, 1857, payable in two years. The material facts are set forth in the opinion delivered by Justice SUTHERLAND. The special term rendered a judgment directing the foreclosure of the mortgage, and the sale of the mortgaged premises, and against Philbrook for any deficiency.

*Carpenter & Beach,* for the appellant.

*R. H. Huntley,* for the respondent.

SUTHERLAND, P. J. The bond and mortgage were executed by Philbrook to the Butterworths. Philbrook and wife conveyed the mortgaged premises to Douglass, subject to the mortgage, Douglass assuming and covenanting with Philbrook to pay the mortgage as a portion of the purchase or consideration money, for such conveyance to Douglass. Douglass afterwards and previous to the 26th day of July, 1859, *paid the mortgage to the mortgagees.* Satisfaction of the mortgage was not acknowledged, and no satisfaction-piece given. Afterwards, and on the 26th day of July, 1859, the bond and mortgage were delivered by the mortgagees to Douglass, together with an assignment, executed by the mortgagees, without the name of any person therein as assignee, a blank having been left for the name of the assignee. Afterwards, and on the 30th day of July, 1859, Douglass delivered the bond and mortgage and assignment, to Kellogg & Parker, as collateral security for his stock note for $1500, which he at the same time delivered to Kellogg & Parker, receiving from them at the same time his protested draft for $1500, then held by Kellogg & Parker. Afterwards, and on the 30th day of August, 1859, the name of the plaintiff was inserted in the blank left in the assignment, and the same, together with the bond and mortgage, re-delivered to the plaintiff in trust for the firm of Kellogg & Parker, of which he was a member, Douglass receiving therefor his stock note for $1500, and the firm cancelling debts and evidences of debt the firm held against him for the remainder of the amount nominally or apparently due on said bond and mortgage, being $2711.27, and on the same day (30th of August) the assignment was duly recorded. Afterwards, and on the 8th day of September, 1859, Douglass, by a deed, conveyed the mortgaged premises to the defendant, Oakes Ames, in fee;

the deed stating on its face that the consideration for such conveyance was $8000.

These facts were found by the judge who tried the action at special term, and most of them appear to have been conceded on the trial, and were conceded on the argument before us, particularly the fact that Douglass *paid* the bond and mortgage to the mortgagees, before any part of the transaction between Douglass and the plaintiff, or the firm of which he was a member, relative to the bond and mortgage.

The judge did not find as a fact, and there was no evidence tending to show, that Ames, on the conveyance to him, assumed or undertook in any form to pay the mortgage, as part of the consideration or purchase money for such conveyance, or that the amount nominally or apparently due on the mortgage was deducted from such consideration or purchase money, or in any other way allowed to Ames on account thereof. The deed to Ames did not show on its face that the conveyance was made subject to the mortgage; on the contrary, it contained a full covenant against all incumbrances.

In addition to the facts above stated, as found by the judge at special term, and which were either conceded, or conclusively established by the evidence, the judge found certain other facts, which no doubt influenced his judgment, but which I do not deem of any material, perhaps I should say, of *any* importance, even if properly found, and authorized by the evidence.

He found, that Douglass "represented to the firm of Kellogg & Parker, (the plaintiff and his partner,) before and at the time they purchased the mortgage of him, that it was a valid and subsisting security; and that they believed it was, until after they took and paid for it as aforesaid, and had the assignment to them recorded; and that they bought and took said mortgage in good faith, and fairly paid therefor."

It may be that the plaintiff's firm should be considered as holders for value, for although they took the mortgage on account of precedent debts of Douglass, yet the evidence

Kellogg *v.* Ames.

tends to show that they delivered up certain securities or evidences of such debts; but I do not think that the finding, that the firm bought and took the mortgage in *good faith*, was authorized by the evidence. Parker, one of the firm, and who filled in the name of the plaintiff in the blank left in the assignment, swore that before doing so he consulted counsel on the question of merger; that he had been told by one counsel that it was a merger, and was told by him that he would not lend a dollar on it; and that he then consulted other counsel, as to " whether the title being in Douglass, and the mortgage being held by him, the mortgage would be merged ;" that after consulting with other counsel, " he wrote in the name." He had no right to suppose that Douglass could have got the mortgage without paying the mortgagees; that there was any room for the question of merger, unless Douglass had paid the mortgage. The evidence shows that Douglass was insolvent, and that the plaintiff's firm took the mortgage for the purpose of securing their debt, or a portion of it, under circumstances and with a knowledge of facts, from which they ought to have inferred that the mortgage had been paid.

But assume that the judge was right in finding that the plaintiff's firm took the mortgage in good faith, if the mortgage was dead, had been extinguished by payment, neither their innocence, nor Douglass' fraud, would resuscitate it; and as bonds and mortgages are not negotiable instruments, like notes and bills of exchange, I cannot see that the finding is of the least importance.

As to the finding, that Douglass represented the mortgage to be a valid and subsisting security, it is certainly doubtful from the evidence whether the representations amounted to any thing more than the expression of an opinion; but if otherwise, Parker's own evidence, which has been referred to, shows that his firm did not rely upon such representations. Concede however that that finding was strictly authorized, and that the plaintiff's firm were induced solely by the rep-

resentations to take the mortgage, if it had been destroyed by payment, these representations did not make it valid, nor did they estop either Ames or Philbrook; and I do not see upon what principle evidence of such representations was admissible, as against Ames or Philbrook.

The judge also found as a fact, that when Douglass paid the mortgage, and also when he sold it to Kellogg & Parker, he elected and intended that the same should not be merged in the superior title, but should be kept alive as a valid and subsisting security.

It is perfectly clear that this finding is wholly immaterial. The law says, payment is satisfaction; and Douglass could not *thwart* the law, or the legal result of his own act, by any election or intention of his.

The judge further found as facts, that Ames took the deed with notice from and by the record, that the mortgage had not been canceled or discharged of record; and that before the deed was delivered, he had actual notice of the existence of the bond and mortgage. Of course the judge did not mean, by this finding, that Ames took the deed with notice of the existence of the bond and mortgage as valid instruments or securities for the payment of money. Whether they were or not, was the very question of law in the case.

I infer from Ames' answer and the evidence, that he knew all about the mortgage when he took the deed; that he knew that it had been paid, and that he had been informed of, and probably had consulted his counsel on, the legal question of merger; and that he took the deed at the peril and risk of being able to defend against the mortgage, as the plaintiff's firm took the mortgage at the peril and risk of being able to enforce it. But I do not see how this knowledge of Ames as to the mortgage and the question about it affects the question of its vitality after payment, or aids the plaintiff in trying to enforce it. Ames had a right to take the chances of being able to defend against the mortgage; and if its lien

had been extinguished by payment, certainly his taking the deed with the notice found by the judge, would not revive it.

I have referred to all the findings of fact by the judge at special term.

There is no necessity, if there is a place, for the doctrine of merger. The controlling fact is, that the mortgage debt was *paid* by Douglass, the owner of the fee, who had assumed to pay it, and had expressly covenanted with Philbrook to pay it, and had been allowed the amount thereof, on account of the consideration to be paid by him for Philbrook's deed. The mortgage debt was primarily Douglass'· debt to pay; and I think the payment by him was satisfaction, and extinguished the lien and vitality of the mortgage as entirely as payment by Philbrook, the mortgagor, would have extinguished them. Indeed, if it were necessary to take that view of the question, Douglass may be considered as having received the money from Philbrook to pay the mortgage, and as having paid it for Philbrook, or as his agent. It is plain, then, that the payment by Douglass extinguished the mortgage debt, and the lien and vitality of the mortgage, whatever may have been the intention of Douglass and the mortgagees; and, to use substantially the language of Judge Selden in *Harbeck* v. *Vanderbilt*, (20 *N. Y. Rep*. 398,) that it was not in their power, by any arrangement between them, to keep the mortgage alive for the benefit of the party making the payment. If then the mortgagees, upon payment by Douglass, had assigned the mortgage to him, the assignment would have been void, except that possibly a court of equity might have sustained it, for the purpose of protecting or perfecting his title to the mortgaged premises, or for some other equitable purpose, when it could be used for the benefit of Douglass or his grantees, without injury to third parties. The assignment certainly would have been absolutely void for the purpose of enabling Douglass to keep the bond and mortgage alive as money securities, for any such purpose as Douglass

used them or undertook to transfer them to the plaintiff or his firm.

In *Kortright* v. *Cady*, (21 *N. Y. Rep.* 343,) it was held that a tender of the money due on a mortgage discharged the lien, though made after the law day. (*See also Champney* v. *Coope*, 34 *Barb.* 539 ; *Mead* v. *York*, 2 *Seld.* 449 ; *Stoddard* v. *Hart*, 23 *N. Y. Rep.* 557.)

But the instrument in the form of an assignment, delivered with the bond and mortgage to Douglass, had in it then the name of no person as assignee ; and there is no evidence, or finding, that the mortgagees authorized the name of the plaintiff to be inserted in the blank left in the assignment. If the bond and mortgage had not been extinguished by payment, I do not see how the plaintiff could make title to them through the assignment. I do not see why the doctrine decided in *Chauncey* v. *Arnold* (24 *N. Y. Rep.* 330) does not apply to the assignment. But it is clearly unnecessary to examine or decide that question in this case.

The conclusion of law of the judge at special term, that the mortgage was a valid and subsisting security, and the decree of foreclosure and sale, and against Philbrook for any deficiency, were clearly erroneous, on the ground that the mortgage had been paid by Douglass. Although Philbrook did not defend, yet I do not see upon what principle a decree could be made against him for a deficiency, particularly in favor of the plaintiff, or his firm, who took the bond and mortgage, on the chances of a lawsuit.

As the defendant Ames asked in his answer for the affirmative relief that the bond and mortgage be delivered up to him, and the plaintiff put in a reply to this answer, and the parties interested were all before the court, I do not see why he was not entitled to it.

Although I do not see how the plaintiff can possibly succeed on a second trial, yet I doubt whether it would be regular for the general term to render the proper judgment in the case without granting a new trial.

My conclusion is, therefore, that the judgment of the special term should be reversed, and a new trial ordered, with costs to abide the event.

BARNARD, J. concurred.

LEONARD, J. (dissenting.) When Douglass re-issued the mortgage he owned the premises affected with the lien thereof, in fee, and had the power as well as right to create any charge or incumbrance thereon which he thought proper. There is no one before us who had, at that time, any right to object to the mortgage being kept outstanding, except the mortgagor, and he makes no objection to it, and asks for no relief in respect to it, and his interest relates only to his personal liability and not to the land. Douglass could, at his pleasure, insist that the payment by him operated as a merger, but no one besides had the right or the interest in the premises to make such claim. The re-issuing of the mortgage by the insertion of the name of the plaintiff in the assignment thereof, and its delivery with the mortgage to him, created or continued the lawful lien of the mortgage upon the land to the extent of the consideration paid by the plaintiff, or by the firm of which he was a member. No one was affected injuriously by the mortgage except the very person who owned the land and continued the mortgage in full operation. Whether the liability of the bondsman was continued, it is not now necessary to inquire, as he has raised no question in that respect, although it may be conceded that there is nothing appearing which would authorize any judgment against him personally. That concession, however, in no way affects the right of the plaintiff to exhaust the security afforded by the pledge of the land.

The rights and equities of the appellant Ames are the only remaining subject to be considered. The mortgage and assignment were duly recorded, and that was constructive notice to him of their existence and that the plaintiff had some

equities which were entitled to consideration. But that was not the only notice which the appellant had that the mortgage was outstanding, and that the plaintiff claimed to hold it as a valid and subsisting security against the property. When he purchased the premises he had *actual knowledge* of all these facts. As against Douglass no one can doubt the right of the plaintiff to foreclose and sell the mortgaged premises. How then can the plaintiff's right be cut off by one who knew of the existence of that right at the time he made his purchase ? We have no evidence of the actual value of the mortgaged premises. The value may or may not be double the sum paid by the appellant and expressed as the consideration in the conveyance to him. It must be assumed that he knew the hazard of his attempt, and arranged the price to be paid for the land accordingly. He made the purchase upon the hazard that he could by litigation defeat the lien of the mortgage. It is absurd to reason about the rights or equities of such a party.

The judgment is right and should be affirmed with costs.

New trial granted.

[NEW YORK GENERAL TERM, November 2, 1863. *Sutherland, Leonard* and *Barnard,* Justices.]