(35 Misc. Rep. 501.)

MERTENS et al. v. WAKEFIELD et al.

(Supreme Court, Special Term, Onondaga County. July, 1901.)

1. MORTGAGES—ASSIGNMENT BY MORTGAGOR AFTER PAYMENT—ESTOPPEL.
   Where a wife mortgages property given her by her husband, thereafter reconveys it to him by warranty deed on his promise, subsequently executed, to will her a life estate in all his property, provided she pays the liens on his real estate, and after paying the bond and mortgage, and taking an assignment of them after the husband's death, the wife assigned them, and thereafter induced another to buy them of her assignee for her advantage, the purchaser may enforce them against her life estate, she having estopped herself from denying their validity; but the purchaser cannot enforce them against the heirs or executors of her husband, the wife having become as to them the principal debtor and having paid the debt.

2. ASSIGNMENT OF MORTGAGE EQUITIES—EQUITIES AGAINST ASSIGNOR.
   An assignee of a mortgage takes it subject not only to all equities of the parties to it, but to equities which third persons could enforce against the assignor.

3. WITNESSES—TESTIMONY OF ATTORNEY AS TO COMMUNICATIONS BY CLIENT.
   Where a husband gave property to his wife, which she mortgaged, and thereafter reconveyed to the husband on his promise to provide for her by will, in a subsequent action by the assignee of the mortgage to foreclose the same after the husband's death, testimony of the husband's attorney and executor as to the facts of the transaction between the husband and wife when she reconveyed on his promise to provide for her by will is not excluded by Code Civ. Proc. § 835, declaring that an attorney at law shall not be allowed to disclose a communication made to him by his client, etc.

4. SAME—TRANSACTION WITH DECEDENT.
   Such attorney's evidence was not objectionable and inadmissible under Code Civ. Proc. § 829, declaring that a party interested in the event, or a person from, through, or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined in his own behalf or in behalf of the party succeeding to

his interest against the executor, administrator, or survivor of a deceased person, etc., concerning any personal transaction or communication between witness and a deceased person, etc.

5. SAME—ABSENCE OF PARTY.
Neither was such testimony inadmissible because the plaintiff in the foreclosure action, who was the wife's assignee, was not present at the transaction when the statement was made.

Action by Jacob M. Mertens and others, as executors and trustees of Alexander Dissel, deceased, against Emma J. Wakefield and others, to foreclose the mortgage. Judgment for plaintiffs.

G. R. & C. C. Cook, for plaintiffs.
McGregor & McIntyre, for Walter S. McGregor, as executor, etc.
Jenney & Jenney, for defendants Mary C. Titus and others, infants.

ANDREWS, J. On December 9, 1889, Robert A. Titus was one of the trustees of the estate of Alexander Dissel, deceased. He was also the owner of lot No. 1 in block No. 37 in the city of Syracuse. Upon that day, for the expressed consideration of one dollar, he conveyed the said lot to his wife. Upon the same day Mr. Titus and his wife gave a bond to the father of the former, Silas Titus, for the sum of $2,500, secured by a mortgage upon the same property. Silas Titus appears to have paid nothing therefor, but he immediately thereafter assigned such bond and mortgage to Alexander Dissel, Jacob M. Mertens, Robert A. Titus, and John McCarthy, as executors and trustees of the Dissel estate. The latter gave a check upon the First National Bank of Syracuse for the sum of $2,500 to the order of Emma J. Titus. This check was indorsed by her, and handed to her husband, Robert A. Titus. He took the same to the Trust & Deposit Company of Onondaga, and deposited it to his individual credit. Robert A. Titus died on or about September 17, 1892. At this time he was carrying life insurance to the amount of $15,000, $5,000 of which was payable to his estate, and the balance to his wife. On the evening before his death he requested her to reconvey the property to him, and to apply the life insurance coming to her to the payment of the mortgage liens upon it and other lands. If she would do so, he promised to give her by will, for life, all his real and personal estate. She accepted the proposition, at once reconveyed to him by warranty deed, in consideration, as expressed, of "one dollar and other good and valuable considerations," the lot in question; and he, in turn, executed such a will as he had agreed. On February 25, 1893, Mrs. Titus, now remarried, and known as Mrs. Wakefield, paid to Mr. Mertens, one of the trustees of the Dissel estate, out of the insurance moneys which she had then received, $6,000. This sum included the entire amount that was due upon the mortgage, and also a certain amount upon other indebtedness. Upon receiving the payment, Mr. Mertens gave to Mrs. Titus a receipt, stating that he had received $6,000 to apply on bond and mortgage to Alexander Dissel and others, as trustees; and also delivered to her an assignment of this same bond and mortgage. This bond and mortgage Mrs. Titus held until April 4, 1894, when she assigned the same to Nathan Jacobson. A

few days later she came to Mr. Mertens, and told him that the Dissel estate held other mortgages upon which the Titus estate was liable; said that she desired to have all of these mortgages held by one person, and asked him to buy the bond and mortgage of Dr. Jacobson. Mr. Mertens finally consented, gave her the amount due thereon, and she thereupon delivered that amount to Dr. Jacobson, and obtained from him an assignment of the securities to the Dissel estate. It is this mortgage, so held, which it is now sought to foreclose. Mr. McGregor, as one of the executors of the estate of Robert A. Titus, appears and answers, alleging that the payment made by Mrs. Titus to the trustees of the Dissel estate on the 25th day of February, 1893, satisfied and extinguished the mortgage in question, and that it had thereafter no force and effect. The four minor children of Mr. Titus also appear by Alexander Jenney, as their special guardian, and submit their rights to the court.

The proposition that, where a mortgage executed to secure a specific debt is once paid, it is dead for all purposes, and cannot be revived to secure a new obligation as against those whose rights have intervened, is too well settled to require the citation of authorities. It is also equally well settled that while, on the one hand, a written document purporting to be a discharge of a mortgage may, under some circumstances, have the effect of an assignment, so, on the other, a conveyance in the form of an assignment may operate as a satisfaction. This is a matter in which the form of the conveyance is not a decisive test, and a court of equity will go behind the form to reach the substantial merits of the case. Ryer v. Gass, 130 Mass. 227. Whether, as is said by Chief Justice Shaw, a given transaction shall be held, in legal effect, to operate as a payment and discharge, which extinguishes the mortgage, or as an assignment, which preserves and keeps it on foot, does not so much depend upon the form of words used as upon the relations subsisting between the parties advancing the money and the party executing the transfer or release, and their relative duties. Brown v. Lapham, 3 Cush. 551. The general principle cannot be better stated than in the words used by the chief justice in the case last cited:

"If the money is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the mortgage, and relieve the mortgaged premises of the lien,—a duty in the proper performance of which others have an interest,—it shall be held to be a release, and not an assignment, although in form it purports to be an assignment. When no such controlling obligation or duty exists, such an assignment shall be held to constitute an extinguishment or an assignment, according to the intent of the parties; and their respective interests in the subject will have a strong bearing upon the question of such intent."

Illustrations of these rules are found in many cases. If, for instance, a grantee who has taken lands expressly subject to a mortgage, which he covenants to pay, does pay the amount due, and then takes an assignment to himself, the mortgage will be deemed paid as regards those who have an interest in the performance of such duty. It was so held in Carlton v. Jackson, 121 Mass. 592, where it was said that "the rule applies that, when the money is paid by one whose duty it is by contract or otherwise to pay the

mortgage, it is a release, though in form it purports to be an assignment." Such was the case of Burnham v. Dorr, 72 Me. 198, where the language of Judge Shaw was quoted with approval. Such, also, was the case of Clay v. Banks, 71 Ga. 363, where the same language is again quoted and approved. The same rule had been enforced in the courts of this state. In Ely v. McNight, 30 How. Prac. 97, the headnote states that:

"Where a mortgagor conveys the premises mortgaged to a purchaser under an agreement that the latter shall pay the mortgage as a part of the consideration for the premises purchased, and, instead of paying the mortgage, the purchaser takes an assignment of it, with the accompanying bond, to himself, and subsequently assigns the same to a third person, who sues the mortgagor upon the bond, the action cannot be sustained. As between the mortgagor and the purchaser, the agreement operates to discharge the mortgage debt."

And the same rule is laid down in Kellogg v. Ames, 41 Barb. 218. A similar illustration is found in the doctrine that a grantor who covenants against incumbrances, and who subsequently pays off the mortgage existing at the time of the conveyance, cannot, by taking an assignment to himself, keep the security alive. Wadsworth v. Williams, 100 Mass. 126; Stoddard v. Rotton, 5 Bosw. 378; Mickles v. Dillaye, 15 Hun, 296; Mickles v. Townsend, 18 N. Y. 575. So a person who, with the funds of a mortgagor, and as his agent, pays a mortgage, cannot enforce the security, even if he has it assigned to himself. The assignment will be treated as a satisfaction. Shepherd v. McClain, 18 N. J. Eq. 128.

Illustrations of the exception suggested by Judge Shaw to the first portion of the rule above quoted that it applies only when others have an interest in its application may be found in certain New York cases. As is said by Judge Rapallo in Hubbell v. Blakeslee, 71 N. Y. 63, even in case the creditor makes the payment out of his own means, yet "if, at the time of the payment, it was agreed that the mortgage should not be extinguished, but should be kept alive, and be transferred to another creditor of the mortgagor, and payment was made and received on that condition, the agreement would have been valid, and such a payment would not extinguish the mortgage, and the creditor to whom the mortgage was assigned in pursuance of such an arrangement could enforce it. No one is injured by such a transaction. The debtor could make the payment for account of the creditor to whom he desired the mortgage assigned, and the creditor could ratify the transaction by accepting the assignment. The result is the same as if the creditor had himself purchased the mortgage with means furnished by his debtor." "No one is injured by such a transaction." In that phrase is the key to such cases as Hubbell v. Blakeslee. The mortgagor has the right to pay any creditor. A creditor so paid has the right to use the money received in the purchase of a mortgage upon the property of his debtor. This, in effect, is what has been done, and of such acts no one can complain.

Illustrations of the second branch of the rule, namely, that, where no duty exists to pay a mortgage, an assignment shall be held to constitute an extinguishment or assignment, according to the in-

·tent of the parties, are also numerous. One will be found in Ryer v. Gass, 130 Mass. 227, cited above. Another is Huntley v. ReVoir, 36 Hun, 291, 20 N. Y. Supp. 920, where Judge Martin, in summing up the case, says:

"Assuming, as we must, the principle established by the cases cited, it follows that Huntley was in no way bound to pay the mortgage debt in exoneration of the land which was the primary fund for its payment, and therefore the defendant ReVoir, as judgment creditor, had no right to insist that the payment was in satisfaction of the mortgage, when it clearly appeared that it was not the intention of the parties to that transaction. It is only where the person paying the mortgage debt is the principal and primary debtor, and is liable personally and primarily for the debt secured, that he cannot prevent the incumbrance from merging where an assignment is taken to a third person for his benefit."

Another well-established rule is of importance in the case at bar. An assignee of a mortgage takes it not only subject to all the equities existing between the parties to the instrument, but to the equities which third persons could enforce against the assignor. Greene v. Warnick, 64 N. Y. 220; Ely v. McNight, 30 How. Prac. 97; Kellogg v. Ames, 41 Barb. 218; Cutts v. Guild, 57 N. Y. 229. Therefore, whether, in this case, Mr. Mertens purchased the mortgage in question in good faith or bad faith, whether he paid consideration for it or paid no consideration, is immaterial. He takes it subject not only to the equities existing between the parties to the instrument, but to any equities which may exist in favor of the heirs of Robert A. Titus, or in favor of his executors, against the assignor. If Mrs. Titus could not enforce it against them, he cannot. Nor can he take advantage here, so far as these heirs and executors are concerned, of any false representations or statements which she may have made. So far as she herself is concerned, the rule is not the same. Independently of all other questions, if she has any interest in the land, the mortgage may be foreclosed to the extent of that interest. She, having assigned it, having tacitly represented that it was a valid and subsisting instrument, is estopped from insisting that it has been paid. Kellogg v. Ames, 41 N. Y. 259; Powell v. Smith, 30 Mich. 451. But as to the heirs of Robert A. Titus, whose property the land is, subject to the life estate of their mother, and as to his executors, against whom a judgment for deficiency is asked, I must hold that the mortgage is paid. In every way the duty to make this payment was imposed upon Mrs. Titus. She was, in the first place, one of the original obligors. It may be, as is insisted by the plaintiffs, that, as between her husband and herself, she was really a surety, and that equitably he, having received the proceeds, should pay the indebtedness. It would be difficult to sustain such a finding in view of the fact that the real estate itself was conveyed to her apparently for a nominal consideration, and that a portion, at least, of the $2,500 seems to have been spent on its improvement. But assuming, for the purposes of the argument, that it be so, still this relationship of principal and surety certainly ceased when she agreed with her husband, in consideration of his making a will in her favor, to deed the property back to him, and to pay out of insurance moneys coming to her the incumbrances upon it. It just

as certainly ceased when she conveyed the property to him in pursuance of this arrangement by a warranty deed. By reason of these transactions, if not before, she became liable, in the first instance, to pay this indebtedness. It was her duty to do so, and her husband, his heirs and executors, became interested in the performance by her of such duty. Under these circumstances, in view of the authorities which have been cited, she clearly could not take an assignment of this bond and mortgage, and preserve them as subsisting securities against her husband's estate. Although she did so in form, the law holds the form of the transaction to be immaterial. It must be assumed that she did what she should have done. She paid the debt. The mortgage ceased to exist, and, as against the other parties whose rights had intervened, she could not resuscitate it.

The facts as to the transaction between her husband and herself depend upon the evidence of Mr. McGregor, who was executor of her husband's estate and was also his attorney. Under the circumstances disclosed, his evidence was not incompetent under section 835 of the Code of Civil Procedure. Hebbard v. Haughian, 70 N. Y. 54; Britton v. Lorenz, 45 N. Y. 51; Brennan v. Hall, 131 N. Y. 160, 29 N. E. 1009; Hurlburt v. Hurlburt, 128 N. Y. 420, 28 N. E. 651. Nor does he testify in his own behalf and interest in such a sense that his evidence is incompetent under section 829 of the Code of Civil Procedure. In re Gagan's Will (Sur.) 20 N. Y. Supp. 426; Id. (Sup.) 21 N. Y. Supp. 350; Martin v. Hillen, 142 N. Y. 140, 36 N. E. 803. Nor was his evidence incompetent for the reason that it was in regard to the transaction which took place between Mr. and Mrs. Titus in the absence of the plaintiff. It was competent as tending to show the relations between the husband and wife, and the fact that, as between them, the obligation to pay the mortgage rested upon the latter. I am therefore of the opinion that, as against the heirs and executors of Mr. Titus, this action must fail, but that the foreclosure may proceed in so far as it affects the life estate of Mrs. Titus and the judgment demanded against her. Findings may be prepared in accordance with these views, and upon the settlement of such findings the question of costs will be considered.

Ordered accordingly.