## OGLETHORPE SAVINGS AND TRUST COMPANY, trustee, *v.* MORGAN *et al.*

The lien of a contractor on real estate improved under a contract with the owner thereof, as provided by the Civil Code (1910); § 3352, if and when "created and declared" as required by § 3353, attaches from the time the work under the contract is commenced, and takes priority over the title acquired, with actual notice of the contractor's claim of lien, by a subsequent grantee in a trust deed from the owner of the real estate, although the deed was executed and recorded before the completion of the contract and before the claim of lien was recorded and before the commencement of an action to recover the amount of the claim.

A conveyance of the property to the purchaser with actual notice of the contractor's claim of lien, after the contractor's lien attaches by a beginning of performance under the contract, does not affect the right to a lien for the whole, though a part of the execution of the contract is before and a part after the time of the conveyance.

In such case the subsequent purchaser of the property with actual notice of the contractor's claim of lien takes subject thereto. The lien is therefore properly recorded against the original owner, and the foreclosure proceeding properly brought against him. The subsequent purchaser is not a necessary party to the action.

The court did not err in overruling the general and special demurrers to the petition as amended, and in appointing a receiver.

No. 1298. FEBRUARY 13, 1920.

Equitable petition. Before Judge Rourke (of the city court). Chatham superior court. December 30, 1918.

In September, 1912, Ebenezer Morgan entered into a contract with the Masonic Temple Association, a corporation, of Chatham county, Georgia, to build a five-story reinforced-concrete building on land known as No. 39 Jasper ward in the City of Savannah, Chatham county, then owned by the association. Morgan immediately entered into possession of the tract of land and began the construction of the building. At the completion of the building according to his contract, the association owed him therefor

$29,726.82. Within three months after the completion of the building, Morgan recorded his mechanic's or contractor's lien in the office of the clerk of the superior court of Chatham county, and within twelve months after his debt against the association became due he brought suit against the association, and recovered a judgment, which was declared to be a general lien upon all the property of the association and a special lien upon said lot No. 39. The assets of the association consisted of that lot, and of subscriptions to its capital stock by various persons, amounting to $20,000. The officers of the association had neglected to collect the amount of these subscriptions, and had practically abandoned the association. On December 1, 1914, and while the work of improving the lot was in progress, but before the completion of the building and the recording of the contractor's lien, the association executed a trust deed to the Real Estate Bank and Trust Company, a corporation, of Chatham county, by the terms of which it conveyed lot No. 39, Jasper ward, to secure an issue of bonds amounting to $100,000. On June 18, 1915, the trustee named in the deed resigned, and the Oglethorpe Savings and Trust Company, also of Chatham county, was substituted as trustee. The trust deed was properly recorded before the completion of the building by Morgan, and before his lien was recorded. The bonds were not sold, but were hypothecated with the trustee as security for the payment of several items of indebtedness amounting to $60,026.20, due and owing to various named persons. Each of the debts so secured was incurred by the association prior to the execution of the trust deed. At the time of the execution of the trust deed the trustee named therein, the substituted trustee, and the several creditors had actual knowledge of the pendency of the plaintiff's contract and notice of his claim of lien. The trustee nevertheless claimed that its title was superior to Morgan's adjudicated lien. Morgan was unable to pay the creditors whose claims were secured by the hypothecation of the bonds of the association; whereupon he filed his petition in equity in Chatham superior court, returnable to the October term, 1918, naming the association and the trustee as parties defendant. In addition to the foregoing, he alleged that the assets of the association were rapidly deteriorating; and he prayed that a receiver be appointed to collect the unpaid subscriptions and to protect the property of the association,

that the court determine between the plaintiff and the trustee the due and proper relation between their liens, that the assets of the association be marshaled and all priorities determined, and that he have such further relief as the court should deem proper in the premises. The association answered, admitting substantially all the allegations of the plaintiff's petition, and, in effect, consenting to the appointment of a receiver as prayed. The trustee filed demurrers, both general and special, to the petition. It also answered. At the December term, 1918, of Chatham superior court these demurrers were overruled; and the court appointed a receiver for all the properties and assets of the association, as prayed in the petition. The case was submitted upon the verified petition, the answer, and the affidavit of J. E. Jaudon. The trustee excepted to the overruling of its demurrers, and to the appointment of a receiver.

*Edward S. Elliott,* for plaintiff in error.

*Osborne, Lawrence & Abrahams* and *Robert L. Colding,* contra.

GEORGE, J. (After stating the foregoing facts.) The judge was authorized to find that the trustee, the grantee in the trust deed, and each of the creditors whose claims against the association were secured by a pledge of the bonds, had actual notice of the plaintiff's contract, and of his contractual rights, whatever they were, at the time of the execution of the deed. The plaintiff's lien was not recorded until the completion of his contract, and at a time subsequent to the making of the trust deed; but it was recorded within three months after the completion of his contract, and he commenced suit against the association for the recovery of the amount due him within twelve months from the time the same became due.

While other questions are made, which will be later considered, the controlling question is whether, under the facts above stated, a contractor's lien, when recorded and prosecuted to judgment as required by the statute, relates back to the beginning of the performance of the contract, or whether it dates from the time of the recording of the claim of lien or of the judgment declaring it. This court, so far as we have been able to find, has not been called upon to determine the precise question involved. Section 3352 of the Civil Code, so far as material here, is as follows: "All mechanics of every sort, who have taken no personal security there-

for, shall, for work done and material furnished in building, repairing, or improving any real estate of their employers; all contractors, materialmen, and persons furnishing material for the improvement of real estate . ., shall each have a special lien on such real estate." Subdivision 2 of section 3352 provides for a lien for work done and material furnished upon the employment of a contractor or some other person than the owner of the real estate, and has no bearing upon the question for decision. Section 3353 provides: "To make good the liens specified in section 3352, they must be created and declared in accordance with the following provisions, and on failure of either the lien shall cease, viz.:" (1) A substantial compliance by the contractor with his contract. (2) The recording of his claim of lien within three months after the completion of the work, or within three months after such material is furnished, in the office of the clerk of the superior court in the county where such property is situated. (3) The commencement of an action for the recovery of the amount of his claim within twelve months from the time the same shall become due. Subdivision 4 of section 3353 is as follows: "As between themselves, the liens provided for in said section shall rank according to date, but all of the liens herein mentioned for repairs, building, or furnishing materials, upon the same property, shall, as to each other, be of the same date when declared and recorded within three months after the work is done, or before that time. Said liens specified in section 3352 shall be inferior to liens for taxes, to the general and special liens of laborers, to the general lien of landlords for rent when reduced to execution and levied, to claims for purchase-money due persons who have only given bonds for titles, and to other general liens, when actual notice of such general lien of landlords and others has been communicated before the work was done or materials furnished; but the said liens provided for in said section shall be superior to all other liens not herein excepted." This court has decided that the subdivision just quoted does not embrace absolute conveyances. In *Ashmore* v. *Whatley,* 99 *Ga.* 150 (24 S. E. 941), it was held: "A bona fide purchaser of the absolute title of real estate, who bought without notice of a materialman's lien upon the same, which at the time of the purchase had been neither recorded nor foreclosed, took the property divested of such lien." It will be

noted that the court did not decide that the materialman's lien upon real estate did not exist before record and before the commencement of foreclosure proceedings. On the contrary the decision recognizes the existence of the lien, and it is declared that the title thus acquired by a bona fide purchaser takes the property "divested of such lien." This decision was followed in *Bennett Lumber Co.* v. *Martin,* 132 *Ga.* 491 (64 S. E. 484), where it was held: "Where title to real estate is conveyed by a duly recorded deed to secure a debt, and the grantee takes the deed and advances the money loaned, without notice and before the record of a materialman's lien upon the property, the title thus acquired is superior to such lien." Attention is called to the fact that the existence of the lien before its record is recognized, but the title of the grantee is held to be "superior to such lien." The decision in *Ashmore* v. *Whatley* was again followed in *Willingham-Tift Lumber Co.* v. *Barnes,* 147 *Ga.* 209 (93 S. E. 201). In *Milner* v. *Wellhouse,* 148 *Ga.* 275 (96 S. E. 566), a case involving a contest between a materialman's lien which was recorded within the time prescribed by law, and a security deed executed by the common debtor after the material was furnished but before the record of the materialman's lien, the principle decided in *Ashmore* v. *Whatley* was again recognized; and the case of *Bennett Lumber Co.* v. *Martin,* supra, was cited in support of the ruling there made. It was further held, in *Milner* v. *Wellhouse,* that the presumption arises that the grantee in the security deed is a purchaser without notice, to quote the language of the Chief Justice, who delivered the opinion, "where it affirmatively appears that the security deed was upon a valuable consideration, and there is nothing to show actual knowledge to the grantee, or knowledge of any fact sufficient to put him upon inquiry as to the existence of the materialman's lien." Again, it will be noted that the court recognized the existence of the lien at the time of the execution of the deed, but held that the title conveyed by the deed was superior to the lien. In all the cases cited there is a strong implication that the lien had its inception at a date prior to the completion of the contract, or the recording of the claim of lien, or the commencement of an action to foreclose the same. Looking to section 3353, it will be observed that the language is, "to make good the liens specified in section 3352," and that in order to make good those liens the

claimant must do certain things, and "on failure of either the lien shall cease." The language quoted recognizes the actual existence of the lien even prior to the completion of the contract, the recording of the claim of lien, or the commencement of an action to foreclose the same. Again, in subdivision 4 of section 3353, where the rank of the lien is declared, it will be observed that the mechanic's or contractor's lien is inferior to "other general liens, when actual notice of such general liens . . has been communicated before the work was done or materials furnished." This language clearly indicates that the lien declared in section 3352 has its inception in the commencement of the work or the beginning of the execution of the contract. It is true that while the rank of the mechanic's or contractor's lien is declared, in so far as it comes in competition with other liens (and it is made superior to all liens not therein excepted), there is no provision that the lien of a materialman shall be superior to title acquired without notice of the existence of such lien, whether the conveyance be absolute or merely for the purpose of securing a debt. Nevertheless, the point which we are now undertaking to make clear is, that under our code the lien exists, and existence of the lien is recognized from the date of. the beginning of the execution of the contract out of which it springs, although it is not made superior to the title acquired by a bona fide purchaser. In 27 Cyc. 110, it is said: "The doing of work or furnishing of materials gives merely an inchoate lien or the right to acquire a lien, and the statutes prescribe the steps to be taken to perfect such lien." Lien laws are of course to be strictly construed, and one who claims a lien must bring himself within the law. *Palin* v. *Cook*, 125 *Ga.* 442 (54 S. E. 90). The mechanic's lien, as to realty, is in derogation of common law, and is to be construed strictly and extended no further than its words plainly import. *Fox* v. *Rucker*, 30 *Ga.* 525. The failure of a mechanic or contractor to perfect his lien, as provided by statute, vitiates the lien, not only as against third persons, but, under our decisions, as against the owner himself. *Cherry* v. *North & South Railroad*, 65 *Ga.* 633, 635. To "make good" the contractor's lien, the statute must be strictly complied with; but in this case the statute was complied with, that is, the contract was completed, the claim of lien recorded, and the action commenced to recover judgment

within the time prescribed by the statute. In such circumstances it must be decided, giving to the language of the statute its clear import, that the contractor's lien attaches from the time the work under the contract is commenced, although it lacks, certainly until its record, the quality of constructive notice. But one who purchases the property while the work is in progress, with knowledge of the contract and notice of the contractor's claim of lien though imperfect at the time, must be held to take the property subject to the lien, provided the contract is completed and the lien is declared and enforced within the time and as prescribed by the statute. See *Loudon* v. *Blandford,* 56 *Ga.* 150 (6). In the sixth division of the opinion in that case Judge Jackson, speaking for the court, said: "If mechanics held a lien on the property sold, duly recorded within three months, and brought suit thereon in twelve months by attachment, their lien attaches from the date of the work done or material furnished, and not from the attachment or by virtue of the attachment, and it is not lost by dissolution of the attachment, but should be paid." Sections 1959 and 1963 of the Code of 1868 were cited. By § 1959, "All mechanics who have taken no personal security therefor shall have a lien on every house, or other property, and the premises to which it shall be attached, for work done or materials furnished in building or repairing such house, or other property; which lien shall be superior in dignity and of higher claim than any other incumbrance, without regard to date. And such lien upon the improvements made by the mechanic shall attach to them without regard to the title." Section 1963 declared: "The following provisions must be complied with, to make good the mechanic's lien; and on failure of either, the lien shall cease—viz.: "enumerating the provisions now contained in subsections 1, 2, and 3 of section 3353 of the Code of 1910. By the act approved February 24, 1873 (Ga. Laws 1873, p. 42, § 41; Civil Code 1910, § 3353 par. 4), the mechanic's lien was declared to be inferior to certain liens therein specified; but nothing in this act indicates an intention to modify the rule announced in *Loudon* v. *Blandford,* supra. See also *Camp* v. *Mayer,* 47 *Ga.* 414, where it was held that the lien of a mechanic attaches at the time the work is done, and that its inception is not postponed until foreclosure. As bearing upon the general question, see *Rose* v. *Gray,* 40 *Ga.* 156; *Frazer* v. *Jackson,* 46 *Ga.* 621; *Beall* v. *Butler,* 54 *Ga.* 43 (1).

The plaintiff in error relies upon the ruling made in *Pace* v. *Shields-Geise Lumber Co.,* 147 *Ga.* 36 (92 S. E. 755), where it was held: "While the lien of a materialman is not complete until a judgment thereon is obtained, after the rendition of the judgment the lien dates from the time of its filing." In that case it appeared that Mrs. Pace died owning certain land, leaving her husband and three daughters as her heirs at law. Before administration on her estate, the husband contracted with the lumber company to build a dwelling-house on the land. When the house was completed the husband failed to pay the contract price. The lumber company recorded a materialman's lien on that portion of the land on which it had constructed the dwelling. After the claim of lien was recorded, but before judgment thereon, the husband was appointed administrator upon the estate of his wife, and, a formal report having been made to the court of ordinary that all debts of the estate had been paid, the land was partitioned among the heirs, that portion of the land against which the lien was recorded being set apart to two of the daughters. Subsequently the lumber company obtained a general judgment against the husband and a special judgment against the property described in the lien. The question before the court was whether the lien of the judgment obtained in the foreclosure proceeding was superior to the deed of partition. The court was not called upon to determine the particular time when the lien attached. The decision is, therefore, to be construed as a holding that the materialman's lien attached prior to the date of the judgment establishing it; and while it was held that on the rendition of the judgment the lien dates from "the time of its filing," meaning of course the date of its record (see *Jones* v. *Kern,* 101 *Ga.* 309, 28 S. E. 850), the court did not intend to adjudicate that the lien dated only from the date of the record. As against the claimants, it was sufficient if it related back to the date on which it was recorded. We find it unnecessary, therefore, to review the decision in the case referred to. The case of *Englehart-Hitchcock Co.* v. *Central Inv. Co.,* 136 *Ga.* 564 (71 S. E. 787), is also distinguishable on its facts, and does not militate against the ruling here made. Many decisions that a laborer's lien does not arise until the completion of the contract of labor are cited; among them, *Walls* v. *Rutherford,* 60 *Ga.* 440; *Love* v. *Cox,* 68 *Ga.* 269; *Cumming* v. *Wright,* 72 *Ga.* 767. These

cases are not controlling upon the question made in this case. Liens of laborers, by the express terms of the statute, "arise upon the completion of their contract of labor." Civil Code, § 3339. In the same connection it may be noted that general liens of landlords date "from the time of the levy of a distress warrant to enforce the same" (§ 3340) ; and special liens of landlords "from the maturity of the crops on the lands rented," unless otherwise agreed upon (§ 3341). As we have seen, the code does not expressly provide when the mechanic's or contractor's lien shall attach.

Owing to the variety of State statutes, cases construing those statutes are of little service beyond the jurisdictions where they were decided. Where mechanics' and contractors' liens attach as of the time when performance begins, the authorities are, however, unanimous in holding that a conveyance made after work is done or materials are furnished does not cut off or affect the right to a lien for the whole, though a part of the execution of the contract is before and a part after the time of the conveyance; provided the contract is "entire" and the execution of it "continuous." Thorn v. Barringer, 73 W. Va. 618 (81 S. E. 846, Ann. Cas. 1916B, 625, and cases there cited). See also Boisot on Mechanics' Liens, §§ 314, 322; Phillips on Mechanic's Liens, §§ 227, 228. If we are correct in holding that the contractor's lien had its inception with the beginning of the work under the contract, it follows, under the findings of fact, that the trustee took subject to the contractor's lien and subject to the contractor's right to make good his lien by the completion of his contract, the recording of his claim of lien, and the commencement of an action to foreclose the same within the time required by our statute. The trustee was not a necessary party defendant to the action to foreclose the lien. It would of course be otherwise if the plaintiff had made his contract subsequently to the execution and delivery of the deed. In this case, however, the trustee is a stranger to the plaintiff. The plaintiff made his contract, commenced the execution of it, and put the trustee on notice of his claim of lien before the execution of the deed. Of course the trustee, not having been made a party defendant in the foreclosure proceeding, is not precluded thereby.

In this view of the case, it is urged that the plaintiff had a complete and adequate remedy at law. We do not think so.

"Where there are conflicting claims to property, and the equities of the respective parties necessarily depend upon the facts which may be proven on the trial, it is right and proper that the same should be definitely settled by the decree of the court before the property is sold, so that it may bring its full value, and that the purchaser may know what he purchases at the sale." *Hall* v. *English,* 47 *Ga.* 511. See also *Eagan* v. *Conway,* 115 *Ga.* 130, 134 (41 S. E. 493); Civil Code, § 4522. Moreover, the plaintiff was a judgment creditor of the association, with a general lien upon all its assets and a special lien upon the building in question. The appointment of a receiver was necessary, for the collection and preservation of the assets of the defunct association, its general assets consisting of unpaid subscriptions to its capital stock, by various persons and in varying amounts, aggregating $20,000. It is obvious that the collection of these assets, by process of garnishment, would involve a multiplicity of suits. Ample reason, therefore, appears for the interposition of a court of equity. It follows from what we have said that the court did not err in overruling the general demurrer and in appointing a receiver. The grounds of special demurrer were cured by amendment.

*Judgment affirmed. All the Justices concur.*