12096.   ELMORE *v.* SOUTHERN BANK & TRUST
COMPANY *et al.*

1. The motion to dismiss the writ of error is without merit.
2. Under the particular facts of the case, the court erred in dismissing, on general demurrer, the intervention filed by the claimant, and thereafter in awarding to the plaintiff the funds in the sheriff's hands.

DECIDED JANUARY '18, 1922.

Money rule; from Dougherty superior court — Judge Harrell. October 30, 1919.

*R. J. Bacon, Cruger Westbrook,* for plaintiff in error.

*E. K. Wilcox, Pottle & Hofmayer,* contra.

LUKE, J.   A rule against the sheriff was granted upon the petition of the Southern Bank & Trust Company, praying that he be required to pay to it certain funds in his hands arising from the sale of realty sold under a judgment in its favor. This judgment resulted from a suit on notes secured by deed to the realty, and was declared to be a special lien on said land. Paul Elmore, a materialman, intervened, claiming a lien on the said funds, for labor and material furnished. This intervention was demurred to. The demurrer was sustained and the intervention "disallowed." Elmore excepted to the refusal to allow him to intervene, and to the order awarding the funds to the Southern Bank & Trust Company.

1.   A motion was made to dismiss the bill of exceptions upon the ground that it "was not tendered and certified within the time required by law, it appearing from the bill of exceptions that the judgment complained of was rendered on October 30, 1919, and that the bill of exceptions was not tendered to the judge until December 29, 1919." The record shows that there is no merit in this motion to dismiss. The certificate of the judge to the bill of exceptions is in part as follows: "I further certify that the bill of exceptions was presented within sixty days of the judgments and rulings complained of, and that the court did not adjourn within thirty days." See Civil Code (1910), § 6152.

2.   The controlling question in this case is whether or not the materialman's claim of lien for material furnished and work done took priority over the security deed of the plaintiff. The general rule on this subject is stated in the case of *Bennett Lumber Co.* v. *Martin,* 132 *Ga.* 491 (64 S. E. 484), which case is cited and relied upon by the defendant in error as authority for the action of the

trial judge in sustaining a general demurrer to the claimant's intervention and dismissing the same. In that case it was held: "Where title to real estate is conveyed by duly recorded deed to secure a debt, and the grantee takes the deed and advances the money loaned, without notice and before the record of a materialman's lien upon the property, the title thus acquired is superior to such lien." However, the facts of the instant case did not warrant the trial judge in dismissing the intervention on this general and well settled rule. It is true that the security deed in question was executed and delivered to the plaintiff bank prior to the time when the claimant, the materialman, began his work, and before the latter had recorded his lien. Thus, the plaintiff, the holder of the security deed, took the property divested of such lien. But the facts set out in the intervention are such as entitled the claimant to a jury trial on the question as to whether or not his alleged lien attached after the execution and delivery of the security deed, since he alleged, in substance, that the plaintiff bank, the holder of the deed, not only had full notice after the conveyance that the materialman was furnishing material and performing work for which he claims a lien on the property, but in legal effect ratified and adopted the claimant's contract to do the work, even going so far as to guarantee payment for certain fixtures installed by the materialman. In this particular the intervention alleged the following facts: "The said Bank and Trust Company (the plaintiff) not only consented that your defendant, Paul Elmore (the claimant) do the said work as was done by him, but planned and executed a course of action whereby they procured the benefit of said work. The said Bank and Trust Company not only consented to the performance of the work as aforesaid by your defendant, but ratified the same for the purpose and intent of procuring the benefit thereof *and did procure the benefit thereof for themselves*. The said Bank and Trust Company at a time when it was patent to them that their advances had equaled the true market value of the property, and when the building thereon was not completed, undertook by further and additional advances to procure the completion of the building for their own benefit, protection, and security, and then and there at such time undertook to guarantee to those who furnished the material for the very work done by your defendant, for a benefit flowing to them as guarantors, the payment for the said material,

and then and there and 'thereby assumed the completion of the building, and did complete the building, in connection with which completion and as a part thereof was the work done by your defendant, as shown by Exhibits ' A ' and ' B.' hereto attached. Then and there, after said guarantees, your defendant's work went to the completion, and as a part thereof was the work done by your defendant. Then and there, after said guarantees for the use and benefit of the said Southern Bank and Trust Company, and at the time the work was done by your defendant, the said Mrs. Carty was merely a figure-head, and in substance and in effect and in equity and in good conscience the said Southern Bank and Trust Company, under their action as herein set forth, are estopped to deny that they were the real movers in procuring the work to be done by your defendant that was done by your defendant. That it would be a fraud under the law and in equity for the said Southern Bank and Trust Company, under the circumstances of this case as hereinbefore set forth and at a time when the said Ella Pope Carty was insolvent, as she then and there was and as known to said Trust Company and unknown to defendant, to furnish the material, as in effect they then and there did, and have the execution of the contract by your defendant and superintend the work and receive the fruits thereof, all of which said Trust Company did without paying your defendant therefor. *That they assumed and ratified the procurement of the work done by your defendant as an implication of law from the facts as herein before set forth as done by your defendant,* and [after] your defendant had duly filed his claim they procured the sale of said premises under their security and bought the same in themselves." (Italics ours.) It was further alleged in the intervention that " Your petitioner shows that the work from the beginning, in the employment of the architect and the paying of the employees, was done by the direction of the Southern Bank and Trust Company through Jerome H. Carty, their agent and the agent of Mrs. Ella Pope Carty, by checks drawn on them, and that in law and in equity he, the said Jerome H. Carty, was acting for the true owners of the property in the making of the contract for the improvements of the said real estate and in the making of the contract with your defendant, and it is in law and equity immaterial whether he nominally acted in the name of Ella Pope Carty or in the name of the Southern Bank and Trust Company in the original

contract with your defendant; that at the time the work was done by your defendant it was accepted and received and assented to by the said Trust Company as owners under implied contractual relations with your defendant, as your defendant is ready to show, and that a failure and refusal on the part of the Southern Bank and Trust Company to pay your defendant, as your defendant is ready to show, amounts in substance and effect to the ratification of a state of facts hereinbefore set forth that amount in law and in equity to collusion on the part of Ella Pope Carty, H. Jerome Carty, and the Southern Bank and Trust Company, to defeat your defendant in his claim for his labor and work under contract as set forth." It is still further alleged in the intervention that "Your intervenor began work January 4th, 1917, and, with full knowledge on defendant's part as to the state of title, said Trust Company undertook to finish the unfinished building before the portion of the work was done by your defendant and prior to the 11th of October, 1917, the exact date being unknown to the defendant, and, had defendant refused to work further on said contract, said Southern Bank and Trust Company would have been compelled, in order to have finished said building as they undertook and did do, to employ defendant or some other person to carry out defendant's contract, and the said Southern Bank and Trust Company accepted the work of defendant under such circumstances and are thereby impliedly liable therefor, *and your defendant was informed of the fact that said Southern Bank and Trust Company was to pay for said material and were completing the said building and relied upon them taking care of him as they were others."* (Italics ours.)

Therefore, under the facts above quoted, which must be taken as true as against a general demurrer, it is clearly alleged that the plaintiff bank knew that the materialman furnished material and did work in improving the property; that the plaintiff, before paying out the full amount of the loan, had notice that the claimant had furnished, was furnishing and would furnish certain material and do certain work in the improvement of the property; and that the plaintiff bank received the benefit of such material furnished and work done by the claimant.

The opinion in the *Bennett* case, supra, impliedly at least, recognizes that such facts as above narrated would alter the general rule there applied, for it was there said: "It is alleged that the de-

fendant paid to Mrs. Martin, or Spencer, or materialman, as the work on the residence progressed, the $1,500 loaned by it to Mrs. Martin; *but it is nowhere alleged that the defendant knew that the plaintiff furnished any material to be used in improving the property.* . . It is nowhere alleged that the defendant, before paying out the full amount of the loan, had any notice that the plaintiff had furnished, was furnishing, or even would furnish any of the material for the improvements being made." (Italics ours.) Neither were any facts alleged in that case as to a ratification or adoption of the materialman's contract to do the work in question. Obviously, therefore, the facts of the *Bennett* case distinguish it from the instant case. Neither can it be said that the plaintiff bank was not benefited by the improvement of the property, for the intervenor alleged that such was the case, and set forth ample facts, as against a general demurrer, in support thereof.

It also seems clear that the claimant would be entitled to a lien for the whole amount of material furnished and work performed, and not merely for work done and material furnished from the time it is alleged that the plaintiff ratified and adopted his contract, since, as was held, in the recent case of *Oglethorpe Savings & Trust Co.* v. *Morgan,* 149 *Ga.* 787 (102 S. E. 528): " The lien of the contract on real estate improved under a contract with the owner thereof, as provided by the Civil Code (1910), § 3352, if and when ' created and declared,' as required by section 3353, *attaches from the time the work under the contract is commenced,* and takes priority over the title acquired, with actual notice of the contractor's claim of lien, by a subsequent grantee in a trust deed from the owner of the real estate, although the deed was executed and recorded before the completion of the contract and before the claim of lien was recorded and before commencement of an action to recover the amount of the claim. A conveyance of the property to the purchaser, with actual notice of the contractor's claim of lien, after the contractor's lien attaches by a beginning of performance under the contract, *does not affect the right to a lien for a whole, though a part of the execution of the contract is before and a part after the time of the conveyance."*

Moreover, a money-rule proceeding is of an equitable nature, and the money should be paid to those who are equitably entitled to it.

It follows from what has been said that the court erred in dis-

missing, on general demurrer, the intervention filed by the claimant and awarding the funds in the sheriff's hands to the plaintiff bank.

*Judgment reversed. Broyles, C. J., concur. Bloodworth, J., dissents.*

BLOODWORTH, J., dissenting. I can not agree with the opinion of the majority of the court on the merits of this case. I think the principle announced in *Bennett Lumber Co.* v. *Martin, 132 Ga.* 491 (64 S. E. 484), should control this case and the judgment should be affirmed. In that case the Supreme Court held: " Where title to real estate is conveyed by a duly recorded deed to secure a debt, and the grantee takes the deed and advances the money loaned, without notice and before the record of a materialman's lien upon the property, the title thus acquired is superior to such lien." See also *Milner* v. *Wellhouse, 148 Ga.* 275, 276 (2) (96 S. E. 566) ; *Willingham-Tift Lumber Co.* v. *Barnes, 147 Ga.* 209 (2) (93 S. E. 201) ; *Englehart-Hitchcock Co.* v. *Central Investment Co., 136 Ga.* 564 (71 S. E. 787). It is insisted in the brief of counsel for plaintiff in error that " while the conveyance in the case at bar was before the contractor began his work, the advances under the conveyance, *as per the program at the time of the conveyance,* were made some before but mostly after the beginning of the contractor's work, and Paul Elmore's contract was performed with full actual notice to the Southern Bank & Trust Company, who even guaranteed the payment for the fixtures installed by his labor." (Italics ours.) The fact that at the time the loan was made a program was agreed upon as to how the money borrowed was to be paid out can not affect the lien created by the deed; nor will this lien be affected because of the fact that " petitioner paid the pay-rolls on said improvements, and paid for the material going into said building, and advanced money for the architects and contractors on said work." Nor would the lien be affected even though the Southern Bank & Trust Company guaranteed the payment for the fixtures installed by Elmore, the company's deed antedating such installment. The ruling is not in conflict with that in *Oglethorpe Savings & Trust Co.* v. *Morgan, 149 Ga.* 787 (102 S. E. 528), cited and relied upon by counsel for plaintiff in error, but is easily differentiated therefrom. The statement of facts in that case shows that " at the time of the execution of the trust deed the trustee named therein, the substituted trustee, and the several creditors had actual knowledge of the pendency of the plain-

tiff's contract and notice of his claim of lien," and in the opinion it is said: " The plaintiff made his contract, commenced the execution of it, and put the trustee on notice of his claim of lien before the execution of the deed." The court said also in the opinion in that case: " It is true that while the rank of the mechanic's or contractor's lien is declared, in so far as it comes in competition with other liens (and it is made superior to all liens not therein excepted), there is no provision that the lien of a materialman shall be superior to title acquired without notice of the existence of such lien, whether the conveyance be absolute or merely for the purpose of securing a debt," and on page 793 it is said: " But one who purchases the property while the work is in progress, with knowledge of the contract and notice of the contractor's claim of lien, though imperfect at the time, must be held to take the property subject to the lien, provided the contract is completed and the lien is declared and enforced within the time and as prescribed by the statute." It will thus be seen that that case and the one under consideration are entirely different. In this case the trust company obtained title to the property prior to any work by Elmore, and the court did not err in striking the amendment to the intervention filed by Paul Elmore, or in refusing to allow him to become a party to the rule, or in awarding the funds to the Southern Bank & Trust Company.