CLAY *vs.* BANKS *et al.*; BANKS *et al. vs.* MILLS *et al.*; WILKINS *vs.* MILLS.

1. The assignee of a chose in action other than promissory notes, bills of exchange, etc., takes it subject to the equities existing at the time of the transfer, and to such as subsequently arise, unless notice be given to the party bound.
2. As a general rule, a party cannot hold a lien on his own property ; and this is never allowed except where equity intervenes to protect the title and thereby prevent a failure of justice.
(*a.*) Where the money due on a mortgage is paid by one whose duty it is, by contract or otherwise, to pay the mortgage, it is a release, though, in form, it purports to be an assignment; and a subsequent assignment of the mortgage by the party whose duty it was to extinguish it, could give no title to the assignee as against the holder of another mortgage, to advance the lien of which the agreement to take up the first incumbrance was made.
3. Notice to the second assignee was unnecessary. Were it otherwise, there were circumstances sufficient to have put him upon inquiry and to have affected his conscience with direct notice.
4. Directions given as to the decree to be rendered and the determination of the equities between the parties in this case.
(*a.*) The act of 1880 allowing mortgages to be foreclosed in equity conferred fuller powers upon the court by this mode of procedure than it had at law ; and in addition to the foreclosure, a personal decree may be rendered against the mortgagor.

February 2. 1884.

Mortgage. Title. Choses in Action. Merger. Equity. Liens. Before Judge ADAMS. Chatham Superior Court. March Term, 1883.

B. B. Ferrill, receiver, and Mrs. Louisa C. Banks filed their bill against G. A. Wilkins and Joseph Clay, alleging, in brief,

as follows: Mrs. Banks filed her bill for alimony against her husband, Charles H. Banks, and sought to have applied for that purpose a note and mortgage which her husband held against Wilkins. Her husband had sold the property to Wilkins; at the time, there were certain incumbrances against it, and the agreement as to the purchase was that Wilkins was to pay off these incumbrances and $11,000.00 in addition thereto. The mortgage now sought to be enforced was given to secure this $11,000.00. A deed was made October 18, 1880, which recited on its face that the same was subject to a "judgment held by John L. Villalonga, of said county and state, against said Charles H. Banks, recovered in the circuit court of the United States for the Southern District of Georgia, at the suit of McMillan C. King and Mitchell C. King, executors, et al., complainants, and Charles H. Banks, defendant, and a small advance due to said John L. Villalonga, made to said Charles H. Banks for making the crop of this year, above conveyed and sold to said party of the second part."

On February 17, 1881, Wilkins sold the property to Clay for an expressed consideration of $36,000.00, which was not paid in cash, but Clay assumed to pay the amount of incumbrances outstanding, both the United States court judgment and the mortgage, and it was recited in the face of the deed that such incumbrances rested upon the property. Wilkins now declines to pay the amount due on the mortgage, on the ground that Clay should pay it, and the latter declines to pay complainants on the ground that only Wilkins can force him to pay the debt, and that it is not convenient to do so. The prayer was that the mortgage might be foreclosed; that a receiver might be appointed to take charge of the property and collect the rents therefrom; that Clay and Wilkins should be decreed personally to pay the amount of the note with interest, costs and attorney's fees; for general relief and subpoena.

Wilkins filed an answer and cross-bill, in which he substantially admitted the facts stated in the bill, and alleged

that Clay had obtained possession on the most solemn assurances that he would pay off the incumbrances and hold Wilkins harmless; that the latter permitted him to retain the $36,000.00 purchase money in his hands for the purpose of paying off such incumbrances; that no part of the purchase money had been paid to Wilkins, nor had Clay paid the mortgage; that on the day of the purchase, Clay, with the money retained in his hands, paid the amount due on the decree in the United States court, thereby satisfying it, and leaving the mortgage as the first lien on the property; that Clay fraudulently attempted to keep the decree in force, and assigned it to George J. Mills on May 20, 1881, to secure an alleged indebtedness from Clay to Mills · that Mills took with full notice that the decree and mortgage lien on which it was founded had been merged and extinguished, and that the mortgage to Banks had become the first lien on the property; that in order to escape the payment of this mortgage, and for the benefit of Clay, Mills placed the decree, which had been transferred to him, in the hands of the United States marshal, and instructed him to advertise and sell the property thereunder; the advertisement was not inserted in the newspaper where the legal advertising was usually done, but in a small afternoon paper of little circulation; Clay requested parties whom he thought disposed to bid at the sale not to do so, and the property was bought by Mills for $500.00, credit for that amount being given on the decree, and the balance held open against Banks; the object of this sale was merely to cloud the title and defeat the Banks mortgage; Clay is in possession and has become insolvent; the property is of such a character that it requires proper management to prevent deterioration in value. The prayer was that Clay be required to appropriate a sufficient amount of the purchase money recited in the deed to him to pay off the Banks mortgage; that it be foreclosed; that it be declared to be the first lien on the property; that the same should be sold to pay off the mortgage; that the assign-

ments of title under the marshal's sale to be declared to be void; that Mills be enjoined from interfering with the property; and that a receiver should be appointed.

Clay filed a demurrer, on the ground that there was no equity in the bill, and that there was no privity between him and complainants. This was overruled.

Complainants filed a supplemental bill, alleging substantially the same facts as those alleged in the answer and cross-bill of Wilkins, and also charging that Mills and Clay had contracted to allow certain named persons to cut timber on a portion of the land, and praying for an injunction and receiver.

Clay answered both the bill of complainants and the cross-bill of Wilkins, the principal points made in his answer being as follows: He denies that he ever contracted with Banks or any person for him. He admits the purchase from Wilkins for $36,000.00, but denies that it was made up by adding the amount of the incumbrances together, or that he agreed to pay all of said incumbrances, including the Banks mortgage. The United States court judgment was a decree on the foreclosure of a mortgage, and was only a lien on the land and not a personal judgment, and he denies that he ever assumed any obligation to pay it, further than buying the land subject to the liens upon it. In determining the consideration of the purchase, it was estimated that $26,000.00 were due on the judgment, and $10,000.00 remained to complete the purchase price. There was never any written agreement or distinct understanding between him and Wilkins as to the payment of the $10,000.00, but there was a verbal agreement that Wilkins was to pay him at once $1,200.00 in money or plantation supplies, and when the $11,000.00 note to Banks fell due, on demand of Wilkins, he was to give Wilkins such paper or guaranty in reference to the liability of the latter as would be satisfactory to him. Wilkins only paid $400.00 in plantation supplies, and when his note fell due, he made no demand on Clay in regard to it.

Several weeks prior to the conveyance from Wilkins to Clay, they were negotiating concerning the trade, and Clay may have said something which led Wilkins to believe the decree would be satisfied, but the terms then offered were rejected, and afterwards the deed was made, subject to the decree. No satisfaction or cancellation or merger ever took place, but it has been assigned regularly by King et al., executors, et al., the original complainants, to one Villalonga, and by the legal representatives of Villalonga to Clay, and by him to Mills. In order to purchase this decree, Clay borrowed $26,000.00 first from Habersham, Son & Co., and subsequently, to repay them, from Mills, who loaned it to him on the faith of the decree being assigned to him as security. Clay was engaged in planting rice, and by reason of a severe gale he was much embarrassed. Complainants then filed their bill, thus further embarrassing him. He stated the fact frankly to Mills, who caused the marshal to advertise and sell the property. The sale was fair and regular, and Mills being the highest bidder, became the purchaser. This was necessary for his own protection. All charges of fraud or collusion are denied.

The transfers of the _fi. fa._ were as follows : A transfer made by the attorneys of the original complainants in the United States court to John L. Villalonga, not dated, which stated that,

"We do hereby assign, transfer and set over all of their right, title and interest in the decree, of which the within is a copy, to John L. Villalonga, to hold it and use it as his own."

A transfer from McCall et al., administrators of Villalonga, to Clay, dated February 17, 1881, which contained the following provisions:

"We do hereby acknowl.dge, do assign, transfer and set over unto the said Joseph Clay, and his assigns, but without recourse on us or the estate we represent, all our right, title, interest and claim whatsoever, in law or in equity, as administrator and administratrix as aforesaid, of the said John L. Villalonga, to or in the decree obtained in the circuit court of the United States for the southern district of Georgia, on the thirteenth day of November, A. D. 1879, in a suit in

equity for the foreclosure of a mortgage, in which McMillan C. King
et al. were complainants and Charles H. Banks was defendant, and
to or in the said bond and mortgage and the suit and proceedings re-
sulting in the decree and the levy, which said decree was duly as-
signed to the said John L. Villalonga on the sixth day of January,
A. D. 1880, a copy of the same with said assignment and the direc-
tions to the marshal of the United States to levy and to enforce said
decree being hereto annexed, to have, hold and use or enforce the
said decree and all said proceedings as fully as we or either of us
could do, and keep the same alive for the protection or defence of
any title acquired to the lands covered by this decree, to the said Jo-
seph Clay or his assigns, or otherwise to use and dispose of the same
as he or they may deem best."

A transfer from Clay to Mills, dated May 20, 1881, which
contained the following provisions

" I, the said Joseph Clay, have assigned, transferred and set over,
and by these presents do assign, transfer and set over unto the said
George J. Mills, his executors, administrators and assigns, all my
right, title, interest and claim whatsoever in law and in equity of, in
and to the decree obtained in the circuit court of the United States
for the Southern District of Georgia on the thirteenth day of Novem-
ber, A. D. 1879, in a suit in equity for the foreclosure of a certain mort-
gage in which McMillan C. King et al., executors, etc., were complain-
ants and Charles H. Banks was defendant, and to or in the bond and
mortgage, and the suit and proceedings resulting in said decree, and
the levy thereof, which said decree has been duly assigned and trans-
ferred to me by regular assignments, a copy of the same, with said
assignments and the directions to the marshals of the United States
to levy and to enforce said decree being hereto attached. To have
and to hold, use and enforce the said decree, and all said proceedings
as full as the same could be enforced by the original complainants in
said decree, whenever such enforcements become necessary to secure
to the said George J. Mills the payment of said debt. And I do here-
by acknowledge the validity and binding force and effect of the said
decree upon the land and premises described therein."

Mills filed an answer and cross-bill, alleging substan-
tially the same as Clay.  He denied that the United States
court decree had been canceled, or that he had any knowl-
edge of any agreement for it to be canceled  and alleged
that the sale was fair and regular, and his purchase bona fide;
that he caused the sale to avoid loss or injury from litiga-
tion ; that after the sale, he had rented the place to Clay, as
trustee for his children; that he was the bona fide owner,

and the lien of the Banks mortgage had ceased to exist. Both Clay and Mills denied that there was any necessity for injunction or receiver because of the cutting of timber, because if the Banks mortgage was a lien at all, there would be much more than enough to secure it. Mills also urged that large supplies of capital and material were necessary in the business of rice planting, which was conducted on the place, and that such loans and advances could not be successfully obtained by a receiver.

It is not necessary to set out the evidence in detail, except to state that one point in contest was whether Mills had notice, or was put on inquiry of any agreement to cancel the *fi. fa.*, which Clay may have made. Besides the recitals in the deeds and transfers above stated, the following testimony was introduced as bearing on this subject: Mills denied any knowledge on the subject, and stated that when Clay desired to borrow the money from him, he turned the papers over to his attorney, J. R. Saussy, Esq., who examined them, and pronounced the security, by taking an assignment of the decree, perfect " so far as the papers were concerned," and thereupon he loaned the money; that the sale was in good faith, to protect himself; that he was the highest bidder, and bought the property; that he then rented it to Clay, as trustee for his children, for $5,000.00 per annum, to be paid from the net crops, if so much; that if Clay repaid him the sum of $26,000.00, with eight per cent interest within ten years, he was to convey the property to him as trustee, that he only wanted his money and interest, but was unwilling to give Ferrill the same terms; that the original notes of Clay have never been called for or surrendered; that Clay never told him that he owed the mortgage, but he said in January, 1882, that some one had a claim against him for $11,000.00.

J. R. Saussy, Esq., testified that he examined the question of the security furnished by the assignment for Mills, and considered it good; did not make parol inquiries; examined the papers; at first was disposed to think there had

been a merger of the lien in the title by reason of Clay's holding both, but upon further investigation, and considering that Clay bought subject to the decree, as expressed in his deed, and that the assignment to him expressly provided that the decree should be kept alive for the protec·tion of the title, and Clay could dispose of it as he saw fit, came to the conclusion that the transfer to Mills would be good.

Special questions were submitted to the jury, who found, in brief, that Clay, as the consideration of the trade between Clay and Wilkins, agreed to pay the Banks mortgage and to pay off and cancel the United States court decree: that Mills advanced the money claimed by him, and took an assignment of the decree in good faith, but with notice of the equity and agreement between Clay and Wilkins; and that Mills purchased *bona fide* at the sale under the decree.

When the verdict was returned, the court said it would be of no service, as it was contradictory, and would necessitate a new trial. Counsel for complainants moved to remand the jury, with instructions explanatory of the question of *bona fides,* by instructing them to find whether Mills had purchased with knowledge of the agreement between Clay and Wilkins. Objection was made to this, on the ground that complainants' counsel had put their own construction on the verdict in presence of the jury. The verdict was received, and the jury discharged.

On motion, the court granted a new trial to Mills, on the ground that the verdict was inconsistent and contradictory, and that there was no evidence of knowledge or notice on his part at the time of the assignment to him as to any verbal agreement between Clay and Wilkins. He then entered up a personal decree against Wilkins and Clay, but refused a decree subjecting the property or against Mills. All parties excepted, and each assigned errors in the proceedings of the court.

GEO. A. MERCER, for plaintiff in error, in first case.

LAWTON & CUNNINGHAM; LESTER & RAVENEL; R. R. RICHARDS; G. J. MILLS, for defendants.

R. R. RICHARDS; LESTER & RAVENEL, for plaintiffs in error in second case.

GEORGE A. MERCER; LAWTON & CUNNINGHAM, for defendants.

LAWTON & CUNNINGHAM, for plaintiff in error in third case.

GEORGE A. MERCER; G. J. MILLS; R. R. RICHARDS; LESTER & RAVENEL, for defendant.

HALL, Justice.

This immense record, covering one hundred and forty-eight printed pages, and out of which issued three separate bills of exceptions, makes but one controlling question, viz: whether the purchaser of land encumbered with a mortgage, which he agrees to extinguish, in order that one which he executes in favor of the vendor to secure the remainder of the purchase money may have priority, can afterwards, instead of satisfying the first mortgage, take an assignment of it to himself, and by pledging it to a third person, who had no notice of the contract with the vendor, as security for a loan, displace and postpone the lien of the last mortgage, in violation of the contract; and whether this assignment is not an extinguishment in favor of the last mortgage. We are of opinion that this question must be answered in the affirmative; and further, that the question of notice, so far as respects the rights of the vendor, under this view of the case, becomes immaterial, as to any claim set up by the present holder of the assigned mortgage, as against the junior mortgage. It is familiar learning that the assignee of a chose in action, other than

promissory notes, bills of exchange, etc., takes it subject to the equities existing at the time of the transfer between the original parties, and to such as subsequently arise, unless notice be given to the party bound.   Row vs. Dawson; Ryall vs. Rowles, 2 W. & T. Lead. Cases, 1531 et seq.   Clay, the assignee of the older mortgage, already had the title to the land, and when he became the owner of the mortgage, the incumbrance was, eo instanti, merged in the title.   As a general rule, a party cannot be said to hold a lien upon his own property.   This is never allowed, except where equity intervenes and keeps the lien outstanding to protect the title, and thereby prevent a failure of justice.   94 U. S. R., 413.   The purpose of this assignment accords with this principle.   Clay took it that the lien of the mortgage which had been foreclosed by a decree might be kept " alive, for the protection or defence of any title acquired by him or his assigns to the lands covered by the same."  ' This plainly appears from the terms of the assignment.   Dickson vs. Williams, 129 Mass., 182, is directly upon the question of merger, under circumstances similar to those made by this case.   In Carlton vs. Jackson, 121 Mass. R., 592, 596, it was distinctly laid down, as a rule applicable to a transaction like this, " that when the money is paid by one whose duty it is, by contract or otherwise, to pay the mortgage, it is a release, though in form it purports to be an assignment. Brown vs. Lapham, 3 Cush., 551; Braman vs. Dowse, 12 Cush., 227.   "The subsequent assignment of the mortgage" by the party whose duty it was to extinguish it, " could give no title" to the assignee, " as against the plaintiff."

The only difference between this case and ours is, that in that there was a written obligation in the deed conveying the premises, binding the grantee to extinguish the mortgage; in ours that obligation rested in parol, and it is insisted here that the cases, as to notice, are, for this reason, clearly distinguishable.   The record of the deed was notice binding upon subsequent assignees; in this case, there could

be no such notice.    Even if notice were necessary, in order to defeat a subsequent assignment and a sale made under a process that was extinguished, there are circumstances quite sufficient here to have put Mr. Mills, the ultimate assignee, upon inquiry and to affect his conscience with direct, which is more effectual for this purpose than constructive notice, implied from the record of an instrument. *Jordan vs. Pollock*, 14 *Ga.* R., 145.

In Platt *vs.* The Bank of Bennington *et al.*, 10 Vt., 292, (S. C. 33 Am. Dec. 201,) the supreme court of that state held that the assignee of a mortgage by the assignment became a mortgagee, and the original mortgagee had no estate left in the land ; and if he afterwards by quit-claim acquired the interest left in the mortgagor, he did not obtain thereby an estate which merged in that of the assignee, but that the failure of the assignee to record his assignment did not postpone the lien of his mortgage to that of a mortgage made by the assignor after the date of the assignment and quit-claim, even though the subsequent mortgagee had no notice of the assignment.

It follows from this that the judgment of the lower court, granting a new trial to Mills and refusing the complainants in the original bill a decree of foreclosure upon the mortgaged premises, was erroneous.    The decree must be modified to this extent : Mills should be given the right to redeem the premises as to complainants' mortgage, with liberty to proceed against Clay, his assignor, not only for the amount of this decree, but for any other amount Clay may be found indebted to him, and for which he holds the assignment of the decree foreclosing the first mortgage. As between Clay and Mills, the assignment of the same is not an extinguishment of the debt.    The complainants are not entitled to hold the decree that was rendered in their favor against Clay ; between him and them there is no privity ; and when the complainants' claim under their mortgage is satisfied, Wilkins is entitled to have the amount received on this account credited on the personal decree in

favor of complainants against him. The decree to be entered on the findings of fact by the jury must conform to these directions.

It is our opinion that the act of the general assembly of 1880, allowing mortgages to be foreclosed in equity, Code, §3979 (a), conferred fuller powers on the court by this mode of procedure than it had at law, and that, in addition to the foreclosure, a personal decree may be rendered against the mortgagor. It is a well established rule that when the court of equity takes jurisdiction for one purpose it holds it for all others necessary to the final settlement of all questions involved in the litigation between the parties growing out of and connected with that subject-matter. If the act was not designed to obviate the necessity of a suit at law to cover any deficiency that might exist, after exhausting the mortgaged property, then it seems to us that it was without any purpose other than the useless multiplication of remedies to accomplish an object that could have been as well obtained without as with it.

Judgment reversed.