## WAGER v. CARROLLTON BANK.

The court erred in directing the verdict. The evidence introduced, with all reasonable deductions or inferences therefrom, did not demand the particular verdict directed by the court.

No. 3761. NOVEMBER 17, 1923.

Claim. Before Judge Irwin. Carroll superior court. April 19, 1923.

B. F. Wager entered into a contract with H. N. Spence in consideration of eighty cents per hour, amounting to $1598, for work and labor, and $4.55 for material furnished, making a total of $1602.55 due to Wager by Spence upon the completion of the contract, for "building, improving, and for labor furnished upon certain real estate belonging to Spence, the contract not being in writing." Wager alleges in his petition foreclosing his lien that he completed the contract on the 23d day of November, 1920, and upon that date the sum of $1168.19 became due and payable. Wager recorded his lien on December 27, 1920, in the following language: "B. F. Wager, a mechanic, contractor, and materialman, claims a lien on the house and premises, and the real estate on which it is erected or built, of H. N. Spence, same being [describing the property] for building, improving, and furnishing materials for the erection of said houses, which is now occupied by the said H. N. Spence. This lien is claimed and recorded within three months from the completion of said houses." Within twelve months from the record of the lien Wager filed his suit setting up the foregoing facts, and praying that his lien be foreclosed. On the trial of the case a verdict was rendered in favor of the plaintiff, and a judgment entered thereon foreclosing the lien of the plaintiff; and an execution was issued and levied on the property described in the claim of lien, the petition, verdict and judgment. The Carrollton Bank filed a claim to the property. On the trial of the claim case the court directed a verdict for the plaintiff for $4.55. To this direction the plaintiff excepted.

*J. J. Reese* and *S. Holderness,* for plaintiff.

*Willis Smith* and *Boykin & Boykin,* contra.

HILL, J. (After stating the foregoing facts.) The Civil Code (1910), § 3352, provides that "All mechanics of every sort, who have taken no personal security therefor, shall, for work done and material furnished in building, repairing, or improving any real

estate of their employers, all contractors, materialmen, and persons furnishing material for the improvement of real estate; . . shall each have a special lien on such real estate," etc. Sec. 3353 provides how mechanics' liens may be declared and created, as follows: " 1. A substantial compliance by the party claiming the lien with his contract for building, repairing, or improving, or for materials or machinery put up or furnished, as set forth in said section. 2. The recording of his claim of lien within three months after the completion of the work, or within three months after such material or machinery is furnished, in the office of the clerk of the superior court in the county where such property is situated, which claim shall be in substance as follows: ' A. B., a mechanic, contractor, materialman, machinist, manufacturer, or other person (as the case may be), claims a lien on the house, factory, steam mill, or railroad (as the case may be), and the premises or real estate on which it is erected or built, of C. D. (describing the houses, premises, real estate, or railroad), for building, repairing, improving, or furnishing material (or whatever the claim may be). 3. The commencement of an action for the recovery of the amount of his claim within twelve months from the time the same shall become due." In *Oglethorpe Savings &c. Co.* v. *Morgan,* 149 *Ga.* 787 (102 S. E. 528), it was held: " The lien of a contractor on real estate improved under a contract with the owner thereof, as provided by the Civil Code (1910), § 3352, if and when ' created and declared ' as required by § 3353, attaches from the time the work under the contract is commenced, and takes priority over the title acquired, with actual notice of the contractor's claim of lien, by a subsequent grantee in a trust deed from the owner of the real estate, although the deed was executed and recorded before the completion of the contract and before the claim of lien was recorded and before the commencement of an action to recover the amount of the claim. A conveyance of the property to the purchaser with actual notice of the contractor's claim of lien, after the contractor's lien attaches by a beginning of performance under the contract, does not affect the right to a lien for the whole, though a part of the execution of the contract is before, and a part after, the time of conveyance. In such case the subsequent purchaser of the property with actual notice of the contractor's claim of lien takes subject thereto. The lien is therefore properly recorded against the original owner, and

the foreclosure proceeding properly brought against him. The subsequent purchaser is not a necessary party to the action."

On the trial of the case the evidence for the plaintiff showed that he entered with Spence into the contract as already stated, and completed his contract; that he had his lien recorded as prescribed by law, within three months from the completion of his contract; that he foreclosed his lien in the superior court within twelve months from the time of the completion of the contract, as prescribed by law; that he obtained a verdict and judgment setting up his lien against the property levied upon, and for the amount declared upon in the petition and as stated in the judgment; that an execution was duly issued upon such judgment and was levied upon the property in controversy; that the claimant purchased the property levied upon; and there is ample evidence in the record tending to show that the claimant had notice of plaintiff's lien. The defendant in fi. fa., H. N. Spence, who was sworn as a witness for the plaintiff, testified that on December 20, 1920, the date of his deed to the claimant, and before that date, C. H. Stewart was president of the bank, Harry Kingsberry was cashier, and Hallum and Boykin were vice-presidents. Hallum was officiating as a member of the finance committee, and " I was officiating as cashier of the bank prior to that time and up until December 6th or 7th, 1920. Between December 6th and 7th, 1920, and the date of the execution of this deed I had a conversation with Mr. C. H. Stewart, practically every day at my home, relative to the business of the bank and relative to the securing of my debts to the bank by the putting up of my property. In reply to the question as to what notice Mr. Stewart had of B. F. Wager's work and lien and indebtedness on this property, I answer that *he had absolute notice of it* (italics ours). I discussed it with him on numerous occasions. . . The arrangement was to borrow enough from my uncle to liquidate the entire indebtedness, including the Wager claim; and my father failed to get the loan. The whole arrangements were made with Mr. Stewart for him to go and do it. We and Mr. Stewart understood that I owed Mr. Wager this amount and it had to be taken care of. We discussed that, I discussed it with him, I owed that as much as I did the bank. In discussing this question with Mr. Stewart we figured up the amount needful to pay it off. He understood the amount that it would take to

liquidate the whole thing." The plaintiff, B. F. Wager, testified: " I know personally that all the gentlemen named (same as named by Mr. Spence), except Mr. Stewart, saw me working on this Spence house and knew that I was working there. I could not swear that Mr. Stewart knew it until later on. I could not swear that he knew it in the beginning, but he knew it about November 1st, or about November 28th. I did not talk with him that day, but he visited Mr. Spence about that time." The plaintiff then testified as to the amount of material he had furnished for the building contructed and the amount that was due him for labor. The above evidence is uncontradicted, and it shows that the president of the bank knew of this identical claim being held by the plaintiff against the property in controversy. In these circumstances we are of the opinion that the court erred in directing a verdict for the plaintiff for only $4.55, being the amount of certain material which the plaintiff had furnished to the defendant to go into the building of the house which was constructed upon the premises in controversy.

But it is argued that the direction of the verdict was not error, because the lien was claimed for $4.55 for material furnished, and the balance was claimed for labor done by Wager as a laborer and not as a mechanic, and his lien as filed claimed no lien as a laborer; and it is insisted that our statutes with respect to the lien laws are in derogation of the common law and are to be strictly construed. It is further insisted that a mechanic is not necessarily such a laborer as is entitled to a lien. We do not agree to this contention. In the case of *Adams* v. *Goodrich,* 55 *Ga.* 233, this court held that " A laborer, though a mechanic, who performs actual manual labor for his employer, is entitled to a laborer's lien on the property of the latter." In the opinion it was said: " The court charged the jury that ' the plaintiff, Adams, was a mechanic, and not such a laborer as was entitled to a lien upon the property of his employer which could be foreclosed upon his own affidavit, under the law providing for the foreclosure of laborer's liens,' to which charge the plaintiff excepted. In our judgment, the court erred in its charge to the jury on the statement of facts disclosed in the record. Although the plaintiff was a mechanic, he was a laborer within the true intent and meaning of the statute, and was entitled to a lien on the property of his employer. A con-

tractor may be a mechanic, but if he does not perform manual labor, he is not entitled to a laborer's lien on the property of his employer. So a laborer may be a mechanic, and if he performs manual labor as such mechanic, he is entitled to a laborer's lien on the property of his employer. A laboring mechanic who performs actual manual labor for his employer is as much entitled to a laborer's lien on his property for the value of the labor performed by him as any other class of laborers. There is no dispute that Adams, the plaintiff, performed the actual manual labor for his employer for which he claims a laborer's lien under the statute. The fact that he was a mechanic at the time he performed that manual labor does not make him any the less a laborer within the true intent and meaning thereof. Laboring mechanics, who perform manual labor for their employers, are embraced within the true intent and meaning of the statute as are any other class of laborers." In the instant case the uncontradicted evidence is that " I claim a lien for my labor." It was also agreed on the trial of the case that the plaintiff was a mechanic. It will be observed that the plaintiff's declaration of lien which he had recorded was " for building, improving, and furnishing materials for the erec-. tion of said houses." It is also insisted that the plaintiff's lien was only to the extent of the material furnished by him for use in the building. But it is admitted that the plaintiff was a mechanic, and the contradicted evidence is that he built the house and was to be paid at the rate of eighty cents per hour. A mechanic has been defined to be " a mechanician, an artisan, artificer, one who practices any mechanical art, one skilled or employed in shaping and uniting materials, as wood, metal, etc., into any kind of structure, machine, or other objects, requiring the use of tools, or other instruments." Webster's International Dictionary. This definition is broad enough to cover a case like the present.

It is also insisted that the petition nowhere alleges that the plaintiff had completed his contract or finished the work contracted to be done within three months prior to the filing of the lien. This contention is without merit. The third paragraph of plaintiff's petition alleges that plaintiff " substantially complied with his contract as above set forth, and finally completed the same on the 23d day of November, 1920; whereupon the said sum of $1168.19 became due and payable." The petition also alleges in the fourth paragraph that plaintiff claims a lien upon the

real estate for the above-named sum, and shows that "within three months from the completion of his said contract aforesaid he recorded his claim of lien upon said real estate as required by law."

It is further insisted that if the bank had no actual notice of the claim of Wager prior to the time it took the deed, Wager could not recover in the suit; and it is argued, that, whatever information came to the president of the bank and the other officials, such actual knowledge that Wager claimed a lien would not be binding on the corporation unless these parties were acting for the bank. In the evidence of Spence, quoted above, it appears that he was dealing directly with Stewart as president of the bank, in order to borrow money to pay off this identical claim; and it can not be held, therefore, that he was acting in his individual capacity and not for the bank. Besides, at the conclusion of the evidence in the case, counsel for the bank, the claimant, moved the court to direct a verdict for the plaintiff, subjecting the property to the amount of $4.55; and unless the bank had notice, a verdict in no amount should have been directed for the plaintiff. Therefore the claimant will not be heard to say that the bank did not have notice.

One other point only needs to be considered, viz., that the plaintiff in setting out and recording his lien did not set forth what amount was claimed for material furnished or as a contractor or mechanic, etc. A sufficient reply to this insistence is that the lien was recorded in the language of the statute, which does not declare that the amount of the claim shall be set out, but merely that the mechanic or materialman, or laborer, as the case may be, claims a lien upon certain property, etc. In the petition foreclosing this lien the amount was set out, the verdict was for a specific amount, and the judgment was entered accordingly; and that is all that the law requires. The purpose of recording the lien is to put the world on notice that there is a lien against the property, and this the plaintiff did, and in doing so complied with the mandate of the statute. The evidence in the case, with all reasonable deductions or inferences therefrom, did not demand the verdict directed by the court; and it was therefore error for the court to direct a verdict for the plaintiff for the sum of $4.55. Civil Code (1910), § 5926.

*Judgment reversed. All the Justices concur.*

ATKINSON, J., concurs in the result.