### PICKLESIMER *et al.* v. SMITH *et al.*

1. Where title to real estate is conveyed by duly recorded deed to secure debt, and the grantee takes the deed and advances the money loaned, without notice of a materialman's claim of lien upon the property, and before the record thereof, the title thus acquired is superior to such lien.
(*a*) The lien of a materialman on real estate, under the Civil Code (1910), § 3352, when created and declared as required by § 3353, attaches from the time the materialman commences, under the contract, to deliver

Appeal and Error, 4 C. J. p. 883, n. 33.

Mechanics' Liens, 40 C. J. p. 282, n. 3; p. 283, n. 24; p. 288, n. 16; p. 289, n. 19; p. 293, n. 53, 54, 55; p. 298, n. 67; p. 299, n. 68; p. 302, n. 43, 44; p. 516, n. 97.

Mortgages, 41 C. J. p. 516, n. 97; p. 547, n. 89; p. 552, n. 70; p. 554, n. 92; p. 558, n. 41.

Notice, 29 Cyc. p. 1113, n. 2.

material, and takes priority over title acquired with actual notice of the materialman's claim of lien by a subsequent grantee from the owner of real estate to secure debt, although the deed is executed and recorded before the completion of the contract of the materialman to furnish material, and before the claim of lien is recorded, and before the commencement of an action to foreclose the lien or recover the amount of the claim.

2. Actual notice to a purchaser or vendee is such notice as is positively proved to have been given to him directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry.

(a) Where a deed to secure debt was executed and recorded before materialmen contracted or began to furnish material to the owner of property embraced in such deed, the record of such deed is constructive notice to materialmen who subsequently furnish material to the vendor in such deed to improve the property, and the title of the vendee in such security deed would not be postponed to the liens of materialmen who thereafter furnish material to improve the property embraced in such deed, because the vendee does not advance all of the money secured by such deed at the time of its execution, but advances it periodically to meet payrolls of the vendor after the materialmen had begun to furnish material under contracts with the vendor.

(b) Where, after materialmen had furnished material to improve the real estate embraced in the deed above referred to, the owner executes and delivers to the vendee therein a second deed to secure debt, and the vendee takes such second deed with actual notice of the claims of liens by such materialmen, the liens of the materialmen, when created and declared as required by section 3353 of the Civil Code, would take priority over the title acquired by the vendee in such second security deed.

(c) Where the evidence before the auditor and the trial judge, upon the question of notice vel non to the vendee in such second security deed, was conflicting, and the auditor and the trial judge found in favor of the priority of such second security deed, this court will not set aside such finding, a finding to the contrary not being demanded under the evidence.

3. Where one agrees to advance weekly to the owner of real estate funds with which to pay the weekly wages of laborers employed by the owner to erect a house thereon, taking from the owner a deed thereto to secure such advances, which is duly recorded, and where he does make such advances, the title of the vendee under the security deed will not be postponed to the liens of materialmen, who, after the record of the security deed and with constructive notice thereof, furnish to the owner materials which are used in making such improvement, upon the theory that such vendee consented that the materialmen should furnish such materials, notwithstanding the fact that under the agreement between the lender and the owner, for the advance of said funds, the owner agreed to begin the erection of said dwelling at once, to complete it within three months, and pay the lender for such advances and ten per cent. thereon for his services in procuring the money, within four months; the lender doing nothing to mislead the materialmen, and having no interest in the

real estate other than his title to secure said advances and pay for his services in obtaining such funds for the owner.

4. As between themselves, the liens provided in section 3352 of the Civil Code rank according to their dates, but all such liens for repairs, building, or furnishing material upon the same property, shall, as to each other, be deemed of the same date, when declared and recorded within three months after the work is done, or before that time.

5. The above rulings render it unnecessary to consider the other questions raised by plaintiffs in error.

No. 5823. JULY 30, 1927.

Equitable petition. Before Judge Ellis. Fulton superior court. October 26, 1926.

*Bryan & Middlebrooks* and *McElreath & Scott,* for plaintiffs in error.

*A. C. Corbett, E. A. Carmain, Mitchell & Mitchell, J. C. Davis, J. B. McCallum,* and *Hendrix & Buchanan,* contra.

HINES, J.  J. C. Burke owned an unimproved lot in the City of Atlanta, which he desired to improve by the erection of a house thereon.  To secure the funds with which to pay the wages of laborers employed by him in erecting said building, Burke, on November 20, 1924, executed and delivered to L. W. Smith, agent, his note for $2000, falling due March 20, 1925, and to secure said note he executed and delivered to L. W. Smith, agent, his deed to said lot, which was recorded November 24, 1924.  On the same day these parties entered into an agreement in writing touching said loan.  This instrument, in which the above lot is fully described, recites that Burke is the owner of said lot, subject to a balance of purchase-money due F. A. Ames, amounting to $1350, that he desires to erect a building thereon, and that he has employed L. W. Smith, agent, to furnish the necessary money to meet the payrolls for labor in constructing said building, and has executed to L. W. Smith, agent, a security deed to said lot in the sum of $2000, to secure him for the sums to be advanced for the above purposes.  L. W. Smith, agent, agrees to furnish to Burke a sufficient sum each week as the building progresses, to meet said payrolls, not to exceed in the aggregate $2000.  In this agreement it is further provided that upon the completion of the building a first loan is to be placed thereon by Burke, at his expense, and that from the proceeds thereof L. W. Smith, agent, is to be paid the amounts so advanced, together with an additional amount equal to ten per cent. of the total amount so advanced by Smith,

agent. Upon the payment of said sums Smith, agent, is to deliver up and cancel said security deed. Burke agrees to begin work on said building at once and complete the same (strikes and other unavoidable hindrances excepted) within three months, and to pay the aforesaid indebtedness to Smith, agent, within four months from date. Smith made said advances from time to time as the building progressed until he had advanced to Burke the sum of $2000. On February 27, 1925, Burke executed and delivered to L. W. Smith, agent, a security deed to this lot and another lot, the latter lot being subsequently released, to secure an additional indebtedness of $1870.65. This deed was recorded on March 31, 1925. These deeds in favor of L. W. Smith, agent, were made subject to a prior security deed in favor of F. A. Ames, dated November 14, 1924, recorded November 18, 1924, and given by Burke to secure a balance of $1350 due Ames on the purchase-money of said lot.

J. W. Picklesimer and other materialmen furnished to Burke labor and materials used in the construction of said building. None of this was furnished prior to November 24, 1924. Most of it was furnished during the year 1925. None of the liens therefor were filed on or before February 27, 1925. Under a proceeding brought in the superior court, this house and lot was placed in the hands of a receiver, and was sold under an order of that court. In that proceeding the funds arising from the sale were claimed by Ames under his security deed, by L. W. Smith, agent, under his two security deeds, and by the holders of the materialmen's liens above referred to. The case was referred to an auditor to determine the priority of these liens. The auditor found that Ames was entitled to be first paid the balance due on the purchase-money of this lot, that L. W. Smith, agent, should next be paid the amounts due him under his two security deeds, and that the fund remaining in the hands of the receiver be apportioned between Picklesimer and the other lienors, pro rata. To this finding the materialmen excepted upon the ground that, under the facts of the case, their liens were superior to the security deeds held by Ames and Smith. Picklesimer further excepted to the finding that the claims of the various lienholders, after the payment of the claims secured by the security deeds, should be paid from the remainder of the fund arising from the sale of the prop-

erty, pro rata, upon the ground that his claim of lien was first filed and was reduced to judgment prior to the judgments obtained by the other lienors on their liens. The priority of the security deed of Ames is not now involved, as he has been settled with and thereby eliminated from the case. The controlling question is whether Smith is entitled to priority of payment, under his security deeds, over the lienors who had duly recorded liens for material furnished and labor employed in erecting the building on the lot involved in this case.

1. Where title to real estate is conveyed by a duly recorded deed to secure debt, and the grantee takes the deed and advances the money loaned, without notice of a materialman's claim of lien upon the property, and before the record thereof, the title thus acquired is superior to such lien. *Bennett Lumber Co.* v. *Martin,* 132 *Ga.* 491 (64 S. E. 484) ; *Milner* v. *Wellhouse,* 148 *Ga.* 275 (96 S. E. 566) ; *Guaranty Investment etc. Co.* v. *Athens Engineering Co.,* 152 *Ga.* 596 (7) (110 S. E. 873). The lien of a materialman on real estate, under the Civil Code (1910), § 3352, when created and declared as required by § 3353, attaches from the time the materialman commences, under the contract, to deliver material, and takes priority over the title acquired, with actual notice of the materialman's claim of lien, by a subsequent grantee in a deed from the owner of the real estate to secure debt, although the deed is executed and recorded before the completion of the contract of the materialman to furnish material, and before the claim of lien is recorded and before the commencement of an action to foreclose the lien or recover the amount of the claim. *Oglethorpe Savings etc. Co.* v. *Morgan,* 149 *Ga.* 787 (102 S. E. 528) ; *Wager* v. *Carrollton Bank,* 156 *Ga.* 783, 784 (120 S. E. 116).

2. Did Smith have actual notice of the claims of liens by the materialmen, under the facts of this case, when he took the two security deeds from Burke under which he claims? Actual notice to a purchaser or vendee is such notice as is positively proved to have been given to him directly and personally, or such as he is presumed to have received personally, because the evidence within his knowledge was sufficient to put him on inquiry. *Jordan* v. *Pollock,* 14 *Ga.* 145 (4) ; *Johnson* v. *Dooly,* 72 *Ga.* 297. "Notice is actual when the proof, positive or presumptive, authorizes a

clear and satisfactory conclusion that the purchaser had knowledge of the encumbrance, or would have had it if he had not wilfully declined to search for it." *Urquhart* v. *Leverett,* 69 *Ga.* 92 (5). The two deeds under which Smith claims stand upon different footings. The first of these deeds was executed and recorded before any of his adversaries had contracted or begun to furnish labor or material to the owner for the improvement of this real estate. It necessarily follows that Smith had no notice of the claims of these materialmen, for labor or material furnished for the purpose of building this house, at the time he took this deed. The contention that this deed should be postponed to the liens of the materialmen, because Smith did not advance the money thereby secured until after the materialmen had begun to furnish or had furnished material, is not well taken. If inchoate liens of materialmen are protected against a subsequent security deed taken with actual notice of the claims of such liens, although some of such material is furnished after the security deed is executed and recorded, we see no reason why the title of a vendee in such deed, which is executed and recorded before the materialmen begin the work or furnish material, with constructive notice thereof, should be postponed to such liens because the vendee does not advance all the money secured by such deed at the time of its execution, but advances it periodically to meet payrolls of the vendor after the materialmen have begun to work and furnish material under contracts with the vendor.

The situation as to the second deed under which Smith claims is different. This deed was executed on February 27, 1925, and recorded March 31, 1925. At the time of the execution of this deed, all the materialmen who had contracts with the owner had commenced to furnish labor or material to Burke for the improvement of this lot, and had practically or substantially completed their contracts. So if Smith, at the time he took this second deed, knew that these materialmen were furnishing labor or material to Burke for the improvement of this real estate, or if the evidence within his knowledge was sufficient to have put him upon inquiry, and if such inquiry would have led to knowledge of the claims of liens by these materialmen, then the liens of these materialmen, when created and declared as required by section 3353 of the Civil Code, would take priority over the title acquired

under this deed. Upon the question of notice vel non the auditor and the trial judge found in favor of Smith. Before this court would be authorized to set aside this finding, the evidence before the auditor and trial judge must have been such as to demand a finding that Smith had actual notice of these claims of liens by these materialmen. After a careful examination of the evidence in this record, we are not prepared to hold that a finding was demanded upon this issue against Smith. There was evidence which would have authorized a finding against Smith. There was likewise evidence to authorize a finding in his favor on this issue. So we do not think that the findings of the auditor and the trial judge upon this issue should be set aside upon the ground that a contrary finding was demanded under the evidence. We are more inclined to hold as we do, by reason of the fact that Smith furnished the money to pay the wages of laborers employed by Burke to aid in the erection of this building; and if they had not been paid, they would have had laborers' liens, which would have been superior to the liens of these materialmen.

3. But it is insisted that these materialmen's liens were contracted with the consent of Smith, and that for this reason his security deed should be postponed to them. There is evidence tending to show that Smith, when he took his security deed to secure the money to be advanced by him to Burke to meet the weekly labor payrolls, simultaneously entered into a contract with Burke by which the latter agreed to complete the building within three months, and to pay Smith for the money so advanced within four months, with ten per cent. thereon for his services in procuring the same. The terms of this agreement are set out in the second division of this opinion. There was evidence authorizing a finding that Smith knew that Burke would have to buy the necessary material for the construction of this building upon credit, and that he expected to pay for it and pay Smith the money advanced by him to meet the labor payrolls, by placing a loan on the property when the building was completed. There was evidence authorizing a finding, of course, that Smith knew that Burke would have to procure material with which to erect this building, but that Smith did not know that Burke expected to purchase the same on credit. The finding of the auditor and the trial judge settled the conflict in the evidence in favor of Smith. There is

nothing in our statute which modifies the general principle that the title of the true owner can not be encumbered by a lien without some act on his part signifying his assent. *Reppard* v. *Morrison*, 120 *Ga*. 28 (47 S. E. 554). In *Central of Georgia Railway Co*. v. *Shiver*, 125 *Ga*. 218 (53 S. E. 610), the railway company leased a parcel of land to one for twenty years, upon a consideration that the lessee would erect thereon a building to be used as a warehouse only, and that all goods received by the lessee should be routed over its line of railroad. The building was to be the property of the lessee, removable by him at the expiration of the lease. The lessee purchased from a materialman articles needed in the erection of the building, and failed to pay for the same. It was held that a petition filed against the lessee and the railway company, for the purpose of foreclosing the lien and subjecting the land and building to the payment of the debt for materials furnished, set forth no cause of action. The true owner, though cognizant that a stranger to the title is having improvements made on the premises, is under no legal duty to give to a materialman any information touching the ownership of the property; and the owner will not be estopped from setting up title thereto as against a materialman, when nothing has been done by any one to mislead him as to the ownership of the premises improved. *Reaves* v. *Meredeth*, 123 *Ga*. 444 (51 S. E. 407). In *Carr* v. *Witt*, 137 *Ga*. 373 (73 S. E. 668), this court held: "A contractor furnishing material and making improvements under a contract with a tenant upon the land occupied by the tenant does not thereby acquire a lien as against the owner of the land, although the owner, with knowledge of the contract between the tenant and the contractor, consented for the improvements to be made." A steamship company owning wharf property, leased it to a railroad company for a period of five years. At the expiration of the term the lease was renewed from year to year upon the same terms, one of which was that on the termination of the lease there should be an equitable adjustment between the parties of the value of any improvements, properly chargeable to capital account, which had been constructed on the premises by the railroad company with the express written consent of the steamship company. During one of the years after the original period of lease had expired, but while it was in force under a renewal for a year, the railroad company

constructed wharves and a shed under contract with a contractor. The materialman furnished the contractor lumber which was used in the improvement, and duly recorded his claim of lien. The steamship company reimbursed the railroad company for the expense of such construction, though it did not consent in writing to the lessee's making of the improvements. It was held that the materialman was not entitled to a lien on the property improved. *Consolidated Lumber Co.* v. *Ocean Steamship Co.,* 142 *Ga.* 186 (82 S. E. 532).

In the instant case, under its facts it can not be held that Smith consented that the materialmen should furnish material to Burke and should have therefor liens superior to his title under his security deed. His security deed was duly recorded before the materialmen furnished material to Burke. The record of his deed was constructive notice to these materialmen of the title of Smith. By the record of his deed the law charged them with notice of his title thereunder. They were in no way misled by any act or conduct of Smith. They furnished material when they were chargeable with notice under the law of Smith's title. The money was advanced by Smith to pay the wages of laborers employed by Burke in the construction of this building, and who would have had liens superior to the materialmen's liens if their wages had not been paid. The contract between Smith and Burke, under which Smith agreed to furnish this money, can not be construed to mean that Smith consented that these materialmen should furnish material and have therefor liens superior to his title. The purpose of this contract was to fix the rights and obligations of the parties thereto, and the stipulation therein that Burke should complete the building in three months, and pay Smith for the money advanced and ten per cent. thereon for his services in procuring it, was not intended and can not be held to evidence any consent on the part of Smith to the furnishing of material by these materialmen. Its purpose was to fix and expedite the time when Smith should be paid. So we are of the opinion that under the facts of the case the title of Smith to this property was not postponed to the liens of these materialmen upon the ground that he expressly or impliedly consented that they should furnish this material and should have liens on the property improved, superior to his title.

4. Picklesimer contends that his lien for material was recorded

and reduced to judgment before the liens of the other materialmen were recorded or reduced to judgment, and that for this reason he is entitled to priority of payment over them. This contention is not well taken. As between themselves, the liens provided in section 3352 of the Code rank according to date, but all such liens for repairs, building, or furnishing materials upon the same property shall, as to each other, be of the same date when declared and recorded within three months after the work is done, or before that time. Civil Code (1910), § 3353, par. 3. The liens of the materialmen in this case are all for material furnished to improve the same piece of property. They were all recorded within three months from the completion of the work or the furnishing of the material. For this reason, under the above section, they all have equal dignity. It follows that the lien of Picklesimer is not entitled to priority over the liens of the other materialmen.

5. The above rulings control the case, and make it unnecessary to consider the other questions raised by the plaintiffs in error.

*Judgment affirmed.   All the Justices concur.*