## 39331. MURRAY v. CHULAK et al.

HILL, Chief Justice.

Plaintiffs each own a portion of a tract of developed property referred to as the "Delk Road property." They brought this complaint in equity to set aside a judgment obtained by the defendant, Murray, based on architectural services rendered in connection with the Delk Road property. A part of that judgment gave Murray a special lien on the property, and he has requested plaintiffs pay the amount of the judgment to prevent him from levying on the property. The plaintiffs also sought declaratory judgment establishing the superiority of their interests in the property over Murray's lien. The trial court granted plaintiffs' motions for summary judgment, finding in their favor on both issues,

and denied Murray's motion for summary judgment. Murray appeals.

In the summer of 1972 one Partiss orally engaged Murray to provide architectural services for various projects. By agreement Murray was required to work on any project requested by Partiss, but Murray was free to work on projects for third parties. All fees received from third parties were to be divided 70% for Partiss and 30% for Murray. Partiss was to provide office space and equipment for Murray, rent free, and to pay all expenses and any drafters or other personnel required by Murray, but Murray interviewed and selected his assistants. Murray was to receive $30,000 per year in equal monthly payments; this compensation was labelled a "draw." Partiss agreed to convey to Murray a 5% interest in any projects on which Murray worked for Partiss. This 5% interest was to have been either a 5% partnership interest or a 5% stock interest, depending on the form in which the particular project was ultimately held. Murray has steadfastly maintained that the foregoing constituted his agreement with Partiss and that such was their agreement from September, 1972, until February, 1974.[1]

One project developed by Partiss involved the construction of an apartment complex with clubhouse, restaurant, motel, and office complex on the Delk Road property. At the time Murray began architectural work on this project in September, 1972, Partiss did not own the property or have an executory contract for its purchase. Shell Oil Co. owned the property. Murray contends that Partiss submitted his plans to First National Bank of Atlanta as part of his loan application for funds to finance acquisition of the property and construction of the project. On December 22, 1972, Partiss acquired the property and, as a part of the same transaction, granted a security deed to Shell and granted First National two security deeds, each covering a separate portion of the property. These deeds were recorded on December 26, 1972. Pursuant to a loan participation agreement with First National, UMET, a real estate investment trust and a plaintiff here, furnished 90% of money advanced by First National.

Murray continued providing architectural services for the project until February, 1974, when he terminated his relationship with Partiss for several reasons including their inability to agree on the terms of their oral contract. The next month Murray filed an

---

[1] One proposed written agreement tendered to Murray by Partiss in October, 1972, contains the foregoing terms, but referred to Murray as an employee and was rejected by Murray for this reason among others.

action against Partiss in the state court of Cobb County to recover the reasonable value of his services and to establish the validity of his architect's lien pursuant to OCGA § 44-14-361 (a) (3) (Code Ann. § 67-2001). Initially, Shell and First National were named defendants but were dropped when First National, being a national bank, contested venue. On May 12, 1974, Murray filed a lis pendens notice, and on May 28 involuntary bankruptcy proceedings were filed against Partiss.

In June, 1975, First National foreclosed on its security deeds from Partiss. ROH Properties, Inc., purchased the property and granted First National a security deed. A second security deed was later granted by ROH to First National for additional funds advanced. In 1976 UMET and First National terminated their relationship and swapped ownership interests in their jointly-held assets. In this exchange UMET received the security deeds from ROH covering the Delk Road property. Several months later UMET foreclosed on these deeds and purchased the property for itself.

In February, 1978, Murray obtained an order from the bankruptcy court lifting the automatic stay and obtained a default judgment in his action against Partiss for $625,000 and a special lien on the Delk Road property in that amount. UMET sold one portion of the property in 1978 to CFC 78, also a plaintiff, and another portion to Surfside 6 Floating Homes, Inc., the third plaintiff, in February, 1979. Murray notified plaintiffs of his lien and of his intention to levy on it if it were not paid. This action to set aside Murray's judgment and lien was then commenced.

1. A superior court of appropriate jurisdiction may set aside a judgment "for fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant." OCGA § 9-11-60 (e) (Code Ann. § 81A-160). A person adversely affected by a judgment may bring a suit in equity to set it aside. *Canal Ins. Co. v. Cambron,* 240 Ga. 708 (1) (242 SE2d 32) (1978). As the owners of the property on which the judgment under attack imposes a lien, plaintiffs are obviously adversely affected by that judgment. Plaintiffs allege three bases for setting aside Murray's judgment.

Plaintiffs first assert that Murray's attempt to claim superiority after having dismissed Shell and First National in the state court action constitutes fraud. Plaintiffs claim that by dismissing as to Shell and First National when venue was challenged, Murray impliedly represented that he was abandoning his claim of superiority and that to revive such claim now constitutes fraud. We disagree. We do not accept the proposition that it is fraudulent to assert a claim against a person voluntarily dismissed as a defendant in an earlier suit. To rule otherwise would be to give voluntary

dismissals unintended legal significance and thereby deter such dismissals. Plaintiffs' reliance on *Cox v. Kirkland,* 249 Ga. 796 (294 SE2d 514) (1982), and similar cases, is misplaced. In *Cox,* we found the judgment was properly set aside on the basis of fraud where Mrs. Kirkland's attorney proceeded to obtain a default judgment *against* Cox knowing Cox was not a proper defendant and having told Cox the error of suing him would be corrected. Here Murray did not represent he was abandoning his claim of lien against the Delk Road property, did not seek to obtain a default judgment against Shell and First National, and did not seek to establish the priority of his lien in the state court action. In view of the venue issue, he made a decision to establish his claim against Partiss alone *at that time.*[2]

Plaintiffs next argue the state court judgment should be set aside because the amount of damages is excessive. Because resolution of this issue might not be dispositive of the case, we do not decide it.

2. Plaintiffs next argue that Murray, as a partner with Partiss in the development of the Delk Road property, was a part-owner and not entitled to a lien on the property. They correctly contend that the owner of property cannot create a lien against his own property and that this rule applies to partnership or jointly owned property. *Clay v. Banks,* 71 Ga. 363 (2) (1883); *Stephens v. Clark,* 154 Ga. App. 306 (2) (268 SE2d 361) (1980). Here Murray had contracted for a 5% ownership interest in the property and was receiving a monthly draw. Pursuant to this oral agreement, Partiss paid Murray for over a year. Partiss provided Murray with office space, equipment, and supplies and paid the salaries of Murray's architectural assistants. In addition Murray was permitted to contract with third parties for architectural services and to use the facilities provided by Partiss in fulfilling these contracts. Murray and Partiss agreed to split these outside fees 30% for Murray and 70% for Partiss.[3] Although subsequently Partiss breached this agreement, we find that, at the time First National

---

[2] Murray contends that because UMET's partner, First National, had notice of his claim of lien by virtue of First National's having been named a party to the state court suit, plaintiffs cannot now set the judgment obtained therein aside due to the "negligence or fault" of their predecessor in title and partner. See OCGA § 9-11-60 (e) (Code Ann. § 81A-160), supra. Thus, Murray urges that plaintiffs are bound by a judgment to which they were not a party by reason of constructive notice of the pendency of that action. If plaintiffs were to be so bound, then clearly First National would be so bound, but a party voluntarily dismissed from a suit prior to judgment is not bound by the later judgment on the basis that such party had notice of the suit.

[3] We find ample part performance to remove this case from the application of the statute of frauds, OCGA § 13-5-31 (Code Ann. § 20-402).

acquired its security interest in the Delk Road property, as to third parties Murray had a 5% equitable interest in ownership of the Delk Road property. However, this determination does not invalidate Murray's judgment against Partiss for damages. That is to say, our determination that, as to third parties, Murray is not entitled to an architect's lien (because of his ownership interest pursuant to the contract with Partiss) does not affirm the trial court's ruling setting aside Murray's state court judgment against Partiss. We do find, however, that that portion of the state court judgment which purports to create a special lien on the Delk Road property must be vacated as to these plaintiffs. On the other hand, we find the trial court erred in setting aside Murray's judgment against Partiss and order that it be reinstated.[4]

3. Murray contends that the trial court erred in denying his motion for summary judgment declaring his lien to be superior. Although the foregoing holding reaches the contrary result, because Murray proceeds on a different theory, we will examine it.

Murray seeks to establish an architect's lien under OCGA § 44-14-360 et seq. (Code Ann. §§ 67-1701, 67-2001 et seq.), particularly OCGA § 44-14-361 (a) (3) (Code Ann. § 67-2001).[5] He claims his lien dates from the time he began work on the project in September of 1972. The usual rule is that mechanics' and materialmen's liens attach from the time the first work is done or the first material provided. See, e.g., *Gamble v. Pilcher,* 242 Ga. 556, 557 (250 SE2d 416) (1978); and *Picklesimer v. Smith,* 164 Ga. 600 (139 SE 72) (1927). Here, however, Partiss did not own the property at the time Murray's work commenced. Partiss was seeking to acquire the property from Shell and was not acting as agent for Shell. A stranger may not order work done upon real estate and charge the true owner. *Central of Ga. R. Co. v. Shiver,* 125 Ga. 218, 221 (53 SE 610) (1906); *Marshall v. Peacock,* 205 Ga. 891, 893 (55 SE2d 354) (1949). Thus Murray's lien dates only from the time Partiss acquired an interest in the property — December 22, 1972.

December 22 is also the date on which First National received security deeds to the property. Our next inquiry is which interest, First National's or Murray's, has priority. A purchase money security

---

[4] In the court below, the parties treated the judgment itself as being valueless and focused their attention on the lien. This undoubtedly accounts for the technical error pointed out above.

[5] We assume without deciding that an architect's lien can be claimed in a suit against the property owner arising from breach of a contract with the owner giving the architect an interest in the property.

deed or mortgage has priority over liens against the purchaser of the property who simultaneously executes a security deed or mortgage for the purchase money. As was stated in *Federal Land Bank v. Bank of Lenox,* 192 Ga. 543, 556 (16 SE2d 9) (1941): "[A] mortgage or deed, to land, securing its purchase-money, and executed as a part of the same transaction in which the purchaser acquires title, will exclude or take precedence over any prior lien against the property arising through or against the purchaser. When the contracts are simultaneously made, so as to constitute one transaction, 'it makes no difference that the purchase-money mortgage may be made to a third person who advances the purchase-money at the time the purchaser receives his conveyance.' " See also *Protestant Episcopal Church v. Lowe Co.,* 131 Ga. 666 (63 SE 136) (1908); *Mitchell v. West End Park Co.,* 171 Ga. 878 (156 SE 888) (1930); *Hand Trading Co. v. Daniels,* 126 Ga. App. 342 (190 SE2d 560) (1972). Thus, First National's security deeds had priority over Murray's architect's lien, at least to the extent of the purchase money loan.

Murray contends his lien is superior because, he contends, First National had *actual notice* of his lien prior to closing the loan, Murray relies upon *Picklesimer v. Smith,* supra; *Wager v. Carrollton Bank,* 156 Ga. 783 (120 SE 116) (1923); *Oglethorpe Savings &c. Co. v. Morgan,* 149 Ga. 787 (102 SE 528) (1919).[6] The secured lenders in those cases were not purchase money lenders. For example, in *Oglethorpe Savings &c. Co.,* supra, it was stated (in the headnote, at p. 787): "The lien of a contractor on real estate improved under a contract with the owner thereof . . . attaches from the time the work under the contract is commenced, and takes priority over the title acquired, with actual notice of the contract's claim of lien, by a subsequent grantee in a trust deed from the owner of the real estate. . . ." That is, the materialman's lien takes priority over the title acquired by a subsequently made security deed granted by the owner of the property if the grantee of the security deed has actual notice of the claim of lien.

We need not decide in this case whether the "actual notice" cases cited above are applicable to a purchase money lender who takes with actual notice of an architect's claim of lien against the purchaser; i.e., whether the "actual notice" cases create an exception to the rule set forth in *Federal Land Bank v. Bank of Lenox,* supra.

---

[6] Old Stone Mtg. &c. Trust v. New Ga. Plumbing, 140 Ga. App. 686 (231 SE2d 785) (1976), affirmed 239 Ga. 345 (236 SE2d 592) (1977), also relied upon, is inapposite as there was no subordination agreement here. The loan in issue in *Gellis v. B. L. I. Constr. Co.,* 148 Ga. App. 527 (251 SE2d 800) (1978), was solely a construction loan.

Even if a purchase money lender's security were found to be subordinate to an architect's lien by virtue of the fact that the lender had actual notice of the architect's claim, Murray could not prevail in this case. Actual notice is "such notice as is positively proved to have been given to him directly and personally, or such as he is presumed to have received personally, because the evidence within his knowledge was sufficient to put him on inquiry." *Picklesimer,* supra, 164 Ga. at 604. Murray contends First National had actual notice of his claim of lien because the drawings submitted with Partiss' loan application bore Murray's name and First National was thereby put on inquiry. But see *Ga. State Savings Assn. v. Wilson,* 189 Ga. 21 (5 SE2d 14) (1939). But had First National inquired as to Murray's status on December 22, 1972, it would have learned that Murray claimed a part ownership of the property and could not claim a lien. See Division 2, supra. First National did not know, and could not have known, that Partiss would breach his contract with Murray causing Murray to claim a lien on the property. Thus, First National's security deed was entitled to priority over Murray's lien, even to the extent that Murray's judgment against Partiss may have exceeded the purchase money.

To the extent that Murray may have had a valid lien against Partiss' interest in the property, that lien, although not yet reduced to a judgment, was divested from the property at the time of First National's foreclosure on the property. Where the holder of the senior encumbrance on realty forecloses on the property, the purchaser obtains title free of all inferior liens and any junior liens attach to the surplus of the proceeds. OCGA § 44-14-530 (Code Ann. § 67-2301); *East Atlanta Bank v. Limbert,* 191 Ga. 486, 489-490 (12 SE2d 865) (1941). Plaintiffs here acquired their title under First National's security deeds.

We find that Murray has no interest in the Delk Road property and thus the trial court did not err in denying Murray's motion for summary judgment. Although we have found that the trial court erred in vacating Murray's judgment against Partiss (Division 1), we find that the trial court was correct in finding plaintiffs' claims to be superior to Murray's.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MARCH 1, 1983 —
REHEARINGS DENIED MARCH 16 and 30, 1983.

*Louis F. McDonald,* for appellant.
*Harvey S. Gray, Warren C. Fortson, Marion Smith II,* for

appellees.

## ON MOTION FOR REHEARING.

On motion for rehearing, Murray urges that there was no oral contract between himself and Partiss, that there were negotiations but no meeting of the minds. Murray's testimony of record is to the contrary. Regarding the construction to be given the testimony of a party on motion for summary judgment, see *Chambers v. Citizens &c. Nat. Bank,* 242 Ga. 498, 502 (249 SE2d 214) (1978).

Murray also urges that *Tanner v. Bell,* 61 Ga. 584 (1878), is applicable here. *Tanner* involved a mortgage, not security deeds. See *Bennett Lumber Co. v. Martin,* 132 Ga. 491, 493, 495 (64 SE 484) (1909); *Williams Bros. Lumber Co. v. Massey,* 179 Ga. 508 (3) (176 SE 378) (1934); OCGA § 44-14-362 (6) (Code Ann. § 67-2002).

*Motion for rehearing denied.*